514

[No. 66842-1-I.   Division One.   July 9, 2012.]

PILCHUCK CONTRACTORS, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

Aaron K. Owada (of AMS Law PC), for appellant.

Robert M. McKenna, Attorney General, and Matthew E. Lund and Sarah Kortokrax, Assistants, for respondent.

¶1 GROSSE, J. — The Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, governs judicial review of decisions issued by the Board of Industrial Insurance Appeals (Board). This court reviews the record before the Board to see whether substantial evidence supports the Board's decision. Here, there was substantial evidence to support the Board's findings that the employer committed a serious violation of WISHA when its employees were acting as flaggers and directing and controlling traffic outside of the closed lane of traffic in direct contravention to the rules promulgated by WISHA. Accordingly, we affirm.

## FACTS

¶2 On August 18, 2008, Pilchuck Contractors Inc. was performing road paving work at the intersection of 44th Avenue West and 212th Street Southwest in Mountlake Terrace. Compliance Safety and Health Officer Berhan Beraki conducted a drive-by inspection of the work site and observed and photographed two employees, Mingkang Hsiao and Mingwah Hsiao (Hsiao brothers), directing and signaling traffic without sign paddles. Beraki identified exhibits 1 through 31 as pictures of the work site that he took as part of his inspection. Exhibit 12 shows Mingkang assisting drivers by showing them the direction in which they were to go to get through the construction site. Exhibits 20 and 23 show Pilchuck employees using hand signals to direct traffic through the work zone. Beraki

observed one of the Hsiao brothers outside of a closed lane while traffic was moving.

¶3 As a result of this drive-by inspection, the Department of Labor and Industries (Department) issued a citation for safety violations on October 9, 2008. The Board upheld the citation, and the superior court affirmed the Board's ruling.[1] Pilchuck appeals.

## ANALYSIS

¶4 This court reviews a decision by the Board directly, based on the record before the agency.[2] Findings of fact are reviewed to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law.[3] "Substantial evidence is evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.' "[4] If supported by substantial evidence when viewed in light of the record as a whole, findings of fact are conclusive.[5]

¶5 Questions of law, including an agency's construction of a regulation, are reviewed de novo, but substantial weight is given to an agency's interpretation of a regulation.[6]

¶6 The state legislature enacted WISHA "to assure, insofar as may reasonably be possible, safe and healthful

---

[1] Pilchuck was originally cited for three violations, but at the hearing the Department modified the citation to the two remaining safety violations appealed here.

[2] *Legacy Roofing, Inc. v. Dep't of Labor & Indus.*, 129 Wn. App. 356, 363, 119 P.3d 366 (2005).

[3] *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 4, 146 P.3d 1212 (2006).

[4] *J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 43, 156 P.3d 250 (2007) (quoting *Holland v. Boeing Co.*, 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).

[5] *Mid Mountain*, 136 Wn. App. at 4; RCW 49.17.150(1).

[6] *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 910-11, 83 P.3d 1012 (2004).

working conditions for every man and woman working in the state of Washington."[7] The Department is charged with promulgating regulations under WISHA,[8] and employers are responsible for complying with these regulations in their oversight of all employees.[9] When the Department charges an employer with a WISHA regulation violation, the Department bears the initial burden of proving the violation occurred.[10] If it charges a "serious" violation of a specific WISHA provision, the Department must prove as part of its prima facie case:

> (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.[11]

The Board determined that Pilchuck committed two serious violations of the flagging regulations found in WAC 296--155-305(3)(a) and WAC 296-155-305(9)(b). WAC 296-155--305(3)(a) provides:

> Flagger signaling must be with sign paddles approved by WSDOT [Washington State Department of Transportation] and conform to guidelines and recommendations of MUTCD [*Manual on Uniform Traffic Control Devices*].

And WAC 296-155-305(9)(b) provides that employers must ensure that

> [f]laggers stand either on the shoulder adjacent to the road user being controlled or in the closed lane prior to stopping road

---

[7] RCW 49.17.010.

[8] RCW 49.17.040.

[9] *Express Constr. Co. v. Dep't of Labor & Indus.*, 151 Wn. App. 589, 596, 215 P.3d 951 (2009).

[10] *Express Constr.*, 151 Wn. App. at 597.

[11] *Express Constr.*, 151 Wn. App. at 597-98.

users. A flagger must only stand in the lane being used by moving road users after road users have stopped.

A "flagger" is defined as "a person who provides temporary traffic control."[12] "Temporary traffic control" is not defined in the regulation. WISHA interprets control as including directing traffic.[13] This interpretation is also supported by reference to the MUTCD, which is incorporated by reference in the regulation. The manual describes flagging procedures as including stopping, directing, alerting, and slowing traffic.[14]

¶7 Pilchuck contends that the Hsiao brothers did not control traffic because there was a functioning traffic light and the workers did not stop traffic. But Mingkang testified that he showed "cars that were coming along that they were supposed to be going in this direction." This was documented by a photograph depicting Mingkang assisting drivers, by showing the direction they needed to go in order to get through the work site.[15] Mingwah also testified that he directed a car where not to turn. Exhibits 20 and 23 depict Pilchuck employees using hand signals to direct traffic through the work zone. Additionally, the employer's traffic control plan prepared for the work site refers to a police flagger and two flaggers.

---

[12] WAC 296-155-305.

[13] Test. of Steven Heist, Commercial Construction Safety and Health Specialist (directing traffic includes controlling traffic and providing guidance).

[14] *See, e.g.*, former MUTCD 6E.04 (2003):

A.  To stop road users, the flagger shall face road users and aim the STOP paddle face toward road users in a stationary position with the arm extended horizontally away from the body. The free arm shall be held with the palm of the hand above shoulder level toward approaching traffic.
B.  To direct stopped road users to proceed, the flagger shall face road users with the SLOW paddle face aimed toward road users in a stationary position with the arm extended horizontally away from the body. The flagger shall signal motion with the free hand for road users to proceed.
C.  To alert or slow traffic, the flagger shall face road users with the SLOW paddle face aimed toward road users in a stationary position with the arm extended horizontally away from the body.

[15] Ex. 12.

¶8 The compliance officer observed two employees in an intersection signaling traffic without a paddle. The employees were signaling with their hands to move traffic along. The compliance officer also observed the two flaggers standing in the roadway intersection exposing them to moving traffic.

¶9 Pilchuck argues that the Hsiao brothers were merely there to set up cones for restricting traffic and to move signs if they needed to be moved. Pilchuck contends that Washington State Trooper Ron Somerville was hired to direct traffic. But the trooper testified in his deposition that he had discussions with the Hsiao brothers and they were aware that he would be off site for lunch and other breaks. The trooper also testified that the Hsiao brothers would give directions to traffic when motorists were confused about the elimination of the left turn or which lane they should be in. The trooper also observed Mingkang using his hand to gesture to traffic to enable it to keep moving. Pilchuck's assertion that the employees were merely providing positive guidance to passing motorists and not flagging is without merit. Nor is there any merit to the argument that Pilchuck did not intend the employees to act as flaggers because their primary job was to act as spotters for construction trucks moving in and out of the work zone. The evidence is substantial that the employees were performing activities that provided temporary traffic control. It is uncontroverted that the Hsiao brothers were signaling with their hands and did not have any paddles as required by the regulations. Pictures and testimony also demonstrated that the Hsiao brothers stepped out into traffic lanes containing moving traffic contrary to the regulations.

¶10 The challenged citation is supported by substantial evidence; accordingly we affirm.

ELLINGTON and SCHINDLER, JJ., concur.