# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON DEPARTMENT OF REVENUE, | No.  50409-0-II |
| Respondent, | |
| v. | |
| GAMESTOP, INC. and SOCOM, LLC, | PUBLISHED OPINION |
| Appellants. | |

WORSWICK, J. — GameStop Corporation (GameStop) is a video game software and hardware retailer that offers a trade-in program where customers may trade in used merchandise and receive store credit for the value of their merchandise.  GameStop appeals a superior court order that reversed the Board of Tax Appeals (Board).  The superior court ruled that the Department of Revenue had correctly assessed retail sales tax on certain transactions where customers made a trade of video game hardware and software or where a customer purchased store merchandise with store credit earned from a prior trade-in of property.

We hold  that (1) video game hardware and video game software are not "property of like kind" under RCW 82.08.010(1)(a)(i) and WAC 458-20-247(5), (2) GameStop's records do not properly identify "separately stated trade-in property" as required by RCW 82.08.010(1)(a)(i), and (3) the single transaction requirement of WAC 458-20-247(4) is invalid to the extent it conflicts with RCW 82.08.010(1)(a)(i).  Accordingly, we reverse the Board's decision amending GameStop's retail sales tax assessments and remand for further proceedings.

No. 50409-0-II

GameStop Inc. and SOCOM LLC are wholly-owned affiliates of GameStop Corporation. Through these two affiliates, GameStop operates approximately 82 retail stores in Washington. GameStop is a retailer of new and used video game software, hardware, and accessories, as well as computer software and other merchandise. GameStop offers its customers a trade-in program in which a customer may trade in used merchandise and elect to receive either cash or store credit for the value of the used merchandise.

When a customer chooses to receive store credit, the credit may be used on an immediate purchase of GameStop merchandise, or the value of the traded-in property may be placed on a stored-value card as a credit to be used at a later date. The store credit may be used only for the purchase of new or used GameStop merchandise.

When a customer uses his or her store credit on an immediate purchase of merchandise, GameStop's sales documents identify the specific merchandise the customer traded in. But when a customer uses the store credit at a later date, GameStop's sales documents state only the amount of store credit applied toward the purchase and do not identify the merchandise that had been traded in. Nonetheless, GameStop can determine what specific merchandise was traded in through its computerized business records.

Washington imposes retail sales tax on each retail sale of tangible personal property. RCW 82.08.020(1)(a). However, "separately stated trade-in property of like kind" is excluded from the calculation of retail sales tax.[1] RCW 82.08.010(1)(a)(i).

---

[1] Both the Board and the parties are in agreement that the term "separately stated" means that the sales documents for a trade-in transaction provide a specific entry that identifies the property traded in.

No. 50409-0-II

The Department promulgated WAC 458-20-247 (Rule 247) to aid in its enforcement of this retail sales tax exclusion. Rule 247 provides that the delivery of trade-in property and the purchase of other merchandise must "be components of a single transaction." WAC 458-20-247(4). Rule 247 also states that "property of like kind" is defined as property within the same generic classification. WAC 458-20-247(5). Rule 247 specifically states that a trade of computer hardware for computer software is not an exchange of property of like kind. WAC 458-20-247(5).

GameStop concluded that a number of its trade-in transactions fell within the retail sales tax exclusion in RCW 82.08.010(1)(a)(i). From 2006 through 2010, GameStop did not charge retail sales tax on transactions where: (1) a customer traded in video game software and used the store credit toward the purchase of video game hardware, (2) a customer traded in video game hardware and used the store credit toward the purchase of video game software, and (3) a customer used store credit from a prior trade-in on a later purchase of merchandise.[2]

In 2012, the Department audited GameStop for the January 2006 through December 2010 tax periods. The Department concluded that GameStop improperly claimed the trade-in exclusion on transactions where a customer traded in video game software and used the store credit toward the purchase of video game hardware (and vice versa), as well as transactions involving the use of store credit from a prior trade-in on a later purchase. The Department assessed GameStop approximately $3,200,000 in additional taxes and interest.

---

[2] A trade of video game software for hardware and a trade of video game hardware for software form the basis of the "property of like kind" issue. The use of prior credit towards a later purchase forms the basis of the single transaction and "separately stated trade-in property" issues.

3

No. 50409-0-II

GameStop appealed the assessment to the Department's Appeals Division.[3] The Department denied GameStop's appeal, and GameStop then appealed to the Board.

The Board held an evidentiary hearing. Michael Nichols, GameStop's Treasurer and Senior Vice President of International Finance, testified that when a customer accepted store credit for the value of their traded-in merchandise, the customer could use the store credit toward a future purchase at GameStop. Nichols also testified that video game consoles perform functions, such as playing DVDs and music, as well as streaming content from the Internet. Nichols also stated that video games did not perform similar functions as game consoles. Following the hearing, the Board entered its final decision, which included findings of fact and conclusions of law.

The Board decided that the transactions at issue were entitled to the retail sales tax exclusion under RCW 82.08.010(1)(a)(i), reasoning that video game hardware and video game software were "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5). Clerk's Papers (CP) at 28. It determined that video game hardware and video game software fell within the general classification of "gaming components" and that "[g]aming hardware (consoles and controllers) and gaming software (video games) are interdependent components of an integrated system" that are bound together in their function and use. CP at 26-27.

Further, the Board decided that purchases made with store credit that had been earned from a prior trade-in were "separately stated" for purposes of RCW 82.08.010(1)(a)(i). Noting that RCW 82.08.010(1)(a)(i) and Rule 247(4) require the consideration for a trade-in of like kind

---

[3] The Department audited GameStop Inc. for the January 2006 to December 2010 reporting periods and audited SOCOM LLC for the January 2008 to December 2010 reporting periods. The audits resulted in assessments of additional retail sales tax for both entities, which both administratively appealed. The Department's appeals division consolidated the two appeals.

property be separately stated in the transaction, the Board reasoned that GameStop met this requirement. Because GameStop's sales documents separately identified the new or used merchandise purchased, as well as the store credit derived from the prior trade-in of property, the Board considered GameStop's record system compliant with RCW 82.08.010(1)(a)(i) and Rule 247(4). Finally, the Board concluded that a purchase of merchandise with store credit that was earned in a prior trade-in was part of a single transaction under RCW 82.08.010(1)(a)(i) and Rule 247(4).

The Board ordered that the retail sales taxes assessed to GameStop be amended because the transactions at issue were entitled to the trade-in retail sales tax exclusion under RCW 82.08.010(1)(a)(i). The Department filed a petition in superior court seeking judicial review of the Board's final decision. The superior court entered an order reversing the Board's order. GameStop appeals.[4]

## ANALYSIS

The Department argues that the Board erred in ordering the Department to amend GameStop's retail sales tax assessments because (1) the Board misapplied the law by concluding that video game hardware and video game software are "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5), (2) the Board misinterpreted the law by concluding that the retail sales tax exclusion prescribed by RCW 82.08.010(1)(a)(i) and Rule 247(4) applies to transactions where a customer purchases store merchandise by redeeming store credit earned

---

[4] Although GameStop appeals from the superior court's reversal of the Board's order, the Department bears the burden of showing that the Board erred in ordering that the Department amend the additional taxes assessed to GameStop. RCW 34.05.570(3)(e); *Steven Klein, Inc. v. Dep't of Revenue*, 183 Wn.2d 889, 896, 357 P.3d 59 (2015).

No. 50409-0-II

from a prior trade-in of used merchandise, and (3) the Board misinterpreted the law by concluding that store credit from a prior trade-in is "separately stated trade-in property" under RCW 82.08.010(1)(a)(i).[5] Because we hold that video game hardware and video game software are not "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5) and that GameStop did not comply with the "separately stated trade-in property" requirement of RCW 82.08.010(1)(a)(i), we reverse the Board's decision amending GameStop's retail sales tax assessments. We disagree with the Department's other arguments. Thus, we reverse the Board's decision and remand for further proceedings.

## I. LEGAL PRINCIPLES

Appeals from the Board are governed by the Administrative Procedure Act (APA), chapter 34.05 RCW. *Steven Klein, Inc.*, 183 Wn.2d at 895. We will reverse a Board's decision if it is based on an erroneous interpretation or application of the law. RCW 34.05.570(3)(d); *Steven Klein, Inc.*, 183 Wn.2d at 895. When reviewing the Board's decision, we sit in the same position as the superior court. *Dep't of Revenue v. Sec. Pac. Bank of Wash. Nat'l Ass'n*, 109 Wn. App. 795, 802, 38 P.3d 354 (2002). The burden of demonstrating the invalidity of the Board's

---

[5] The Department also argues that we should reject the Board's finding of fact 12 because it is not supported by substantial evidence. The Department admits that "this finding is not significant for purposes of deciding this appeal." Br. of Resp't (Department) at 38. Finding of fact 12 states that a customer who chooses to exchange merchandise for store credit "is choosing to trade his or her used merchandise for new or used in-store merchandise." Administrative Record at 36. We agree with the Department that this finding is insignificant, and we also hold that sufficient evidence supports it. Nichols testified that GameStop customers can purchase only store merchandise with the store credit and may purchase either new or used store merchandise. We find this evidence sufficient to persuade a fair-minded person of its truth. *Pilchuck Contractors, Inc. v. Dep't of Labor & Indus.*, 170 Wn. App. 514, 517, 286 P.3d 383 (2012).

decision is on the party asserting invalidity. RCW 34.05.570(3)(e); *Steven Klein, Inc.*, 183 Wn.2d at 896.

We review the Board's decisions based on statutory interpretation de novo. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012). The primary goal of statutory interpretation is to determine and implement the legislature's intent. *Tesoro*, 173 Wn.2d at 556. To determine the legislature's intent, we first look to the plain language of the statute to discern its plain meaning. *Tesoro*, 173 Wn.2d at 556. "We discern the plain meaning from the ordinary meaning of the language at issue, the statute's context, related provisions, and the statutory scheme as a whole." *Dep't of Revenue v Sprint Spectrum, LP.*, 174 Wn. App. 645, 658, 302 P.3d 1280 (2013).

If the plain language of the statute is subject only to one interpretation, it is unambiguous and we give effect to the statute's plain meaning as an expression of legislative intent. *Tesoro*, 173 Wn.2d at 556; *Skagit Cty. Pub. Hosp. Dist. No. 1 v. Dep't of Revenue*, 158 Wn. App. 426, 437, 242 P.3d 909 (2010). We cannot add words to an unambiguous statute. *Dot Foods, Inc. v. Dep't of Revenue*, 166 Wn.2d 912, 921, 215 P.3d 185 (2009). If, however, the plain language of the statute is susceptible to two or more reasonable interpretations, the statute is ambiguous. *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005). We give substantial weight to the Department's interpretation of an ambiguous statute. *Dep't of Revenue v. Bi-Mor, Inc.*, 171 Wn. App. 197, 202, 286 P.3d 417 (2012).

The Department may prescribe regulations to enforce the tax code. RCW 82.32.300. We give great deference to the Department's interpretation of its own regulations, especially where the legislature has silently acquiesced over a long period to the Department's construction. *In re Sehome Park Care Center, Inc.*, 127 Wn.2d 774, 780, 903 P.2d 443 (1995); *First Student, Inc. v.*

No. 50409-0-II

*Dep't of Revenue*, __ Wn. App. __, 423 P.3d 921, 930 (2018).  However, the Department's

interpretation is not binding on this court.  *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752,

764, 153 P.3d 839 (2007).

We presume that a regulation is valid if it is reasonably consistent with the statute it

implements.  *Pierce Cty. v. State*, 144 Wn. App. 783, 836, 185 P.3d 594 (2008).  But the

Department does not have the power to promulgate regulations that amend or change legislative

enactments.  *Pierce Cty.*, 144 Wn. App. at 836.  Consequently, regulations that are inconsistent

with the statutes they implement are invalid.  *Granger*, 159 Wn.2d at 764.

Under Washington's tax code, retail sales tax is imposed on each retail sale of tangible

personal property.  RCW 82.08.020(1)(a).  The retail sales tax is calculated based on the "sales

price" of the item sold.  RCW 82.08.010(1)(a)(i), .020(1)(a).  Under RCW 82.08.010(1)(a)(i), the

"sales price" is "the total amount of consideration, except separately stated trade-in property of

like kind, including cash, credit, property, and services, for which tangible personal property . . .

[is] sold."  Accordingly, separately stated trade-in property of like kind is exempt from retail

sales tax.  RCW 82.08.010(1)(a)(i).

The Department promulgated Rule 247, which provides in relevant part:

> (4) **Trade-in as consideration.**  Property traded in must be consideration
> delivered by the buyer to the seller.  The sales documents must identify the tangible
> personal property being purchased and trade-in property being delivered to the
> seller.  This does not require simultaneous transfers of the property being traded in
> and the property being purchased, but it does require that the delivery of the trade-
> in and the purchase be components of a single transaction.  Sales documents,
> executed not later than the date the trade-in property is delivered to the seller, must
> identify the property purchased and the trade-in property . . . .
>
> (5) **Property of like kind.**  The term "property of like kind" means articles
> of tangible personal property of the same generic classification.  It refers to the class
> and kind of property, not to its grade or quality.  The term includes all property
> within a general classification rather than within a specific category in the

8

classification. . . . These general classifications are determined by the nature of the property and its function or use. . . .

. . . The exclusion of the value of property traded in, however, does not include such things as a motorcycle for a boat, a diamond ring for a television set, a battery for lumber, *computer hardware for computer software*, or farm machinery (including tractors and self-propelled combines) for a car.

(Emphasis added.)

## II. PROPERTY OF LIKE KIND

The Department argues that the Board erred in ordering the Department to amend GameStop's retail sales tax assessments because the Board misapplied the law by concluding that video game hardware and video game software are "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5). We agree.

Under RCW 82.08.010(1)(a)(i), "separately stated trade-in property of like kind" is excluded from the calculation of retail sales tax. Rule 247(5) provides that "property of like kind" means

articles of tangible personal property of the same generic classification. It refers to the class and kind of property, not to its grade or quality. The term includes all property within a general classification rather than within a specific category in the classification. . . . These general classifications are determined by the nature of the property and its function and use.

Rule 247(5) specifically states that a trade of computer hardware and computer software is not a trade of like kind property.

The language of Rule 247(5) regarding computer hardware and software appears to have derived from a Department of Revenue administrative decision. Wash. Dep't of Revenue, Determination No. 91-044, 10 Wash. Tax Dec. 395 (1990). Although administrative decisions are not binding on this court, we recognize certain decisions of the Board as persuasive authority.

No. 50409-0-II

*N. Cent. Wash. Respiratory Care Servs., Inc. v. Dep't of Revenue*, 165 Wn. App 616, 635, 268 P.3d 972 (2011).

In Determination No. 91-044, the taxpayer argued that computer hardware and software should be generically classified as a "computer system" as defined in WAC 458-20-15501 (Rule 155.01) and, therefore, were like-kind property under Rule 247.[6] Determination No. 91-044, at 2. However, the administrative law judge ruled that software and hardware are not property of like kind under Rule 247 because software and hardware do not serve the same purpose nor are they property of the same general class. Determination No. 91-044, at 6. "Hardware is generally the mechanical and electronic parts of a computer; software (programs) is generally the instructions that command the hardware." Determination No. 91-044, at 6.

Here, during the Board's evidentiary hearing, Nichols testified that video game consoles perform a number of functions, including playing DVDs and music, as well as streaming Internet content. Nichols also stated that video game software cannot perform those same functions. In its final decision, the Board determined that video game hardware and video game software were "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5) because they fall within the same general classification of "gaming components." The Board reasoned that because video game hardware and video game software are components of an integrated system, they necessarily performed the same function and use.

---

[6] Rule 155.01 defines a "computer system" as a "functional unit, consisting of one or more computers and associated software . . . ." WAC 458-20-15501(1)(b).

We hold that video game software and video game hardware are not property of like kind because software and hardware do not perform the same function or use.[7] RCW 82.08.010(1)(a)(i) does not define the term "property of like kind." Rule 247(5) states that property of like kind is tangible personal property with the same generic classification. To determine whether tangible personal property has the same generic classification, we look to the "nature of the property and its function or use." WAC 458-20-247(5).

Although video game software and video game hardware are employed together, they do not perform the same function or use. Video game hardware contains a computer system that is made up of mechanical and electronic parts and includes a computer processing unit, graphics processing unit, and memory. On the other hand, video game software provides commands to the hardware and directs its operation so that a video game may function. The use of video game hardware does not require the use of video game software.

In addition, video game software performs the discrete function of allowing a video game to play on a console. A console can be used for a number of other independent functions, like Internet streaming. Moreover, video game software and video game hardware are a subcategory of computer software and computer hardware, and Rule 247(5) explicitly provides that computer hardware and computer software do not have the same function and purpose.[8] Further, the legislature has never changed RCW 82.08.010(1)(a)(i) in response to Rule 247(5).

---

[7] The Department characterizes the Board's decision regarding like kind property as creating a new "interdependent components" standard, then argues that the Board misapplied this new standard. Because the Board did not create a new standard, and because we reverse the Board's decision regarding whether software and hardware are property of like kind, we do not address this argument.

[8] The parties do not argue that Rule 247(5) is inconsistent with RCW 82.08.010(1)(a)(i).

Because video game software and video game hardware are not within the same generic classification, they are not "property of like kind." Thus, the Board misapplied the law in determining that video game software and video game hardware are property of like kind for purposes of RCW 82.08.010(1)(a)(i) and Rule 247(5).

### III. SEPARATELY STATED TRADE-IN PROPERTY

The Department also argues that the Board erred in ordering the Department to amend GameStop's retail sales tax assessments because the Board misinterpreted the law by concluding that store credit from a prior trade-in is "'separately stated' trade-in property" under RCW 82.08.010(1)(a)(i).[9] Br. of Resp't (Department) at 39-42. We agree.

We employ traditional rules of grammar in determining the plain language of a statute. *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). RCW 82.08.010(1)(a)(i) states in relevant part:

> "Selling price" includes "sales price." "Sales price" means the total amount of consideration, except separately stated trade-in property of like kind, including cash, credit, property, and services, for which tangible personal property, extended warranties, digital goods, digital codes, digital automated services, or other services or anything else defined as a "retail sale" under RCW 82.04.050 are sold, leased, or rented, valued in money, whether received in money or otherwise.

---

[9] The Department also assigns error to finding of fact 15, which provides:

> When the trade-in credit is loaded onto a stored-value card and used at a later date, the sales invoice pertaining to the subsequent purchase of merchandise identifies the new purchases and states the separate amount of trade-in credit that is being applied as an offset. The Taxpayer maintains computerized business records from which the Taxpayer (or an auditor) can identify each item of trade-in property that generated the credit on the stored-value card.

Clerk's Papers (CP) at 23. An appellant's brief must include arguments supporting the issues presented for review and citations to legal authority. RAP 10.3(a)(6). Because the Department does not provide argument suggesting that the Board's finding was erroneous and does not provide citation to authority, we do not consider this assignment of error.

To determine the plain meaning of RCW 82.08.010(1)(a)(i), it is helpful to examine the grammatical structure of the statute. *See Bunker*, 169 Wn.2d at 578. Here, "except separately stated trade-in property of like kind" is a parenthetical phrase offset by commas. "A comma serves many functions, but its purpose always is to set a phrase apart from the rest of the sentence." *E. Gig Harbor Improvement Ass'n v. Pierce Cty.*, 106 Wn.2d 707, 713, 724 P.2d 1009 (1986). Because this parenthetical phrase is set off by commas, it acts independently, providing an exception to "the total amount of consideration" for the sales price. As a result, "the total amount of consideration" includes "cash, credit, property, and services." The statute unambiguously identifies what is included in the sales price (cash, credit, property, and services), and thus subject to taxation, and what is not (separately stated trade-in property of like kind).

When a GameStop customer trades in used merchandise and chooses to receive store credit for the value of the used merchandise, the customer may either use the credit immediately or at a later date. When a customer chooses to use his or her store credit on the purchase of store merchandise at a later date, GameStop's sales documents state the amount of store credit previously earned, but not the specific merchandise traded in. The Board determined that purchases made with store credit were separately stated amounts under RCW 82.08.010(1)(a)(i), even where GameStop's sales documents did not separately identify the property that was traded in.

The Board's interpretation of RCW 82.08.010(1)(a)(i) as merely requiring that "sales documents separately identify the consideration derived from the trade-in property" is divergent from the plain meaning of the statute. CP at 26. The statute does not state "except separately

stated trade-in *value*." Rather, "except separately-stated trade in *property* of like kind" includes only the property traded in.

Moreover, the Board's interpretation of RCW 82.08.010(1)(a)(i) defeats the purpose of the separately stated requirement. The parties agree that the "separately stated" requirement's purpose is to facilitate the Department's audit of a taxpayer's records. GameStop does not dispute that the sales documents at the time of the sale do not separately state the traded in property. Nonetheless, it argues that it has fulfilled the separately stated requirement because the trade-in property is listed at the time of the trade-in transaction. But if a GameStop customer were to trade in a combination of games and a console for credit and then apply a portion of that credit towards a subsequent purchase of merchandise, GameStop's record system would not be able to attribute the specific credit used to the games or the console traded-in.[10]

Because the traded-in merchandise is not separately stated on the subsequent sales receipts as required by RCW 82.08.010(1)(a)(i), it is unknown which portions of the credit used were traded in game-for-game or console-for-game. This ambiguity in GameStop's records prevents an accurate accounting of transactions involving store credit. As such, GameStop's record system does not comport with RCW 82.08.010(1)(a)(i).

---

[10] For example, a customer could trade in a mixture of games and consoles for store credit, then return at a later time to use some of that credit, but also trade in additional merchandise to add to his credit balance. Then the customer could return again to purchase additional merchandise. At some point, because the traded-in merchandise is not separately stated on the subsequent sales receipts as required by RCW 82.08.010(1)(a)(i), GameStop's record-keeping system would be unable to determine which type of merchandise was represented on the customer's credit balance.

## IV. SINGLE TRANSACTION[11]

The Department also argues that the Board erred in ordering the Department to amend

GameStop's retail sales tax assessments because the tax exclusion does not apply because the

purchase of merchandise with store credit that was earned in a prior trade-in is not part of a

"single transaction" under Rule 247(4). GameStop contends that we need not resolve whether

there was a single transaction because Rule 247(4)'s single transaction requirement conflicts

with RCW 82.08.010(1)(a)(i). We agree with GameStop.

RCW 82.08.010(1)(a)(i) defines the term "sales price" as "the total amount of

consideration, except separately stated trade-in property of like kind, including cash, credit,

property, and services, for which tangible personal property . . . [is] sold." Rule 247(4) provides:

> Property traded in must be consideration delivered by the buyer to the seller. . . .
> This does not require simultaneous transfers of the property being traded in and the
> property being purchased, but it does require that the delivery of the trade-in and
> the purchase be components of a single transaction. Sales documents, executed not
> later than the date the trade-in property is delivered to the seller, must identify the
> property purchased and the trade-in property . . . .

By its plain language, RCW 82.08.010(1)(a)(i) excludes "separately stated trade-in

property of like kind" from the calculation of retail sales tax. RCW 82.08.010(1)(a)(i) does not

state when the trade-in property must be delivered or when the purchase of like-kind property

must take place. In addition, RCW 82.08.010(1)(a)(i) makes no mention of the transaction

requirements for the trade-in. As a result, the plain meaning of RCW 82.08.010(1)(a)(i) is

subject only to one interpretation—that a trade-in of personal property is not subject to any

---

[11] To the extent that some GameStop transactions at issue meet the "separately stated"
requirement of RCW 82.08.010(1)(a)(i) but fail the single transaction requirement of Rule
247(4), we address the argument.

timing requirements. Accordingly, RCW 82.08.010(1)(a)(i) is unambiguous insofar as it relates to the timing requirements of the trade-in transaction.

The Department states that Rule 247(4)'s interpretation of RCW 82.08.010(1)(a)(i) is entitled to considerable deference.[12] Rule 247(4) implements and interprets RCW 82.08.010(1)(a)(i), and it requires that a trade-in and subsequent purchase of property be part of a single transaction that takes place on the same day. Although we give great deference to the Department's interpretation of its regulations, a Department cannot enforce regulations that effectively amend a statute. *Pierce Cty.*, 144 Wn. App. at 836.

Rule 247(4)'s single transaction and same day sale requirements are contrary to the plain language of RCW 82.08.010(1)(a)(i), because the statute makes no mention of the timing of the trade-in transaction. Moreover, the Department's interpretation would require this court to add words to RCW 82.08.010(1)(a)(i), and we cannot add words to an unambiguous statute. *Dot Foods*, 166 Wn.2d at 921. Because Rule 247(4) is inconsistent with RCW 82.08.010(1)(a)(i), the regulation is invalid to the extent that it conflicts with the plain language of the statute. *Granger*, 159 Wn.2d at 764.

## CONCLUSION

We hold that video game hardware and video game software are not "property of like kind" under RCW 82.08.010(1)(a)(i) and Rule 247(5) and that GameStop did not comply with the "separately stated trade-in property" requirement of RCW 82.08.010(1)(a)(i). Accordingly,

---

[12] The Department also notes that the Board improperly relied on an out-of-state case to support its conclusion that the retail sales tax exclusion prescribed by RCW 82.08.010(1)(a)(i) and Rule 247(4) applied to transactions where a customer purchases store merchandise by redeeming store credit earned from a prior trade-in of used merchandise. We review the Board's decision de novo and need not address the Board's rationale. *Tesoro Ref. & Mktg. Co.*, 173 Wn.2d at 556.

No. 50409-0-II

we reverse the Board's decision amending GameStop's retail sales tax assessments and remand

for further proceedings consistent with this opinion.

Worswick, P.J.

We concur:

Johanson, J.

Melnick, J.