# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| POTELCO INC., <br><br> Appellant, <br><br> v. <br><br> WASHINGTON STATE, DEPARTMENT OF LABOR AND INDUSTRIES, <br><br> Respondent. | No. 78433-1-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION <br><br><br><br> FILED: June 10, 2019 |

APPELWICK, C.J. — The Department cited Potelco for failing to ensure that a crane was certified and proof load tested. The Board of Industrial Insurance Appeals and the trial court affirmed the citation. Potelco argues that WAC 296-155-52901 does not apply because it reasonably believed it was operating a digger derrick and not a crane, and it was not performing "construction work" as statutorily defined. It argues alternatively that this court should downgrade the violation from general to de minimis. We affirm.

## FACTS

In November 2015, Potelco Inc., a utility contractor, was performing utility maintenance work on an existing utility line on NE 116th Street in Bellevue. On November 6, Ronald Solheim, a crane safety supervisor with the Department of Labor and Industries (Department), drove by the worksite on his way to work. Solheim noticed some peculiarities with the equipment the workers were using.

He notified Potelco that he was going to visit the jobsite for an inspection the following morning.

Solheim went to the site the next day and photographed the equipment[1] Potelco had been using the day before. A company called Elliott Equipment Company manufactured the equipment, and its model number was 30105. The equipment had a nylon hoist line at its base, which Solheim testified was "very unusual on this type of crane."

Potelco line crew foreman Dean Davis was present at the jobsite when Solheim did his inspection. Davis testified that he believed the equipment that Potelco was using was a digger derrick, not a crane.

Of his inspection, Solheim stated,

> [W]hat caught my attention was that yellow hoist rope or hoist line. I wanted to see exactly what it was because I'd only heard of one other mobile boom truck in the entire industry that had been approved to use the nylon type line for hoisting and that was manufactured by Grove.

Solheim also photographed the manufacturer's plate, which was attached to the base of the boom near the operator station. This plate identifies the machine's serial number, load charts, manufacture date, whether it has an insulating boom, and the standard under which it was manufactured. Solheim testified that the Elliott 30105 complied with the ANSI/ASME-B30.5 standard.[2] ASME B-30.5 is a national standard that applies specifically to all mobile cranes.

---

[1] The Department refers to the equipment as a "crane," while Potelco refers to the same piece of equipment as "equipment," "vehicle" or "digger derrick."

[2] "ASME" is an acronym for the American Society of Mechanical Engineers. "ANSI" is an acronym for American National Standards Institute.

Solheim testified that all of the digger derricks that he has seen have been manufactured under a different standard. Solheim also testified that the load chart attached to the operation station for the equipment indicated that it met the ASME B30.5 requirements. He stated that if the crane had been manufactured under the digger derrick standard, the load chart "would definitely be different."

Describing how the piece of equipment that he inspected differed from a digger derrick, Solheim stated,

> [I]t doesn't have the right number, D115, on the boom or on the load charts. [A digger derrick] has a different size hoist line on the load chart than the one that I inspected. And so the [Load Moment Indicator (LMI)] would be -- information being put out by the LMI would be definitely different and require some modification to the computer, possibly.
>
> The outriggers on a Digger Derrick are allowed to be extended at three different positions which changes the load charts. The one [I inspected] is not allowed to be at three different positions.

Solheim further explained that the different standards under which the two products are manufactured is a "definite indication in determining whether it's a Digger Derrick." Solheim testified that Potelco had both digger derricks and cranes in their fleet.

Based on his investigation, Solheim determined that the Elliott 30105 was a "mobile crane with attachments," and not a digger derrick. Solheim testified that he asked Potelco for documents establishing that the equipment in question was a digger derrick as they claimed, but never received that information. Following Solheim's inspection, the Department cited Potelco for failing to ensure the Elliott 30105 was certified and proof load tested, as required by WAC 296-155-52901.

Potelco appealed the citation. Potelco argued that WAC 296-155-52901 did not apply because (1) it was performing "utility work," and not "construction work," and (2) it reasonably believed it was operating a digger derrick and not a crane. In a proposed decision and order, the Board of Industrial Insurance Appeals (Board) rejected Potelco's argument that it was not engaged in construction work. But, it concluded that Potelco, through exercising reasonable diligence, could not have known that the equipment was a crane subject to WAC 296-155-52901, and vacated the citation.

The Department petitioned for review of the proposed order. The Board found that Potelco's work replacing utility poles was "construction," as statutorily defined. The Board also found the equipment Potelco used was a crane as defined by WAC 296-155-52902. Finally, the Board found that Potelco, through exercising reasonable diligence, could have known that the Elliott 30105 was a crane. The Board affirmed the citation. Potelco appealed the Board's decision and order to the superior court, which also affirmed. Potelco appeals.

## DISCUSSION

Potelco makes three arguments. First, it argues that, because it reasonably believed it was operating a digger derrick and not a crane, WAC 296-155-52901 does not apply. Second, it argues that, because Potelco was not performing "construction work" as statutorily defined, this court should vacate the citation. Third, it argues alternatively that this court should downgrade the violation from general to de minimis.

I. Standard of Review

This court reviews a decision by the Board directly, based on the record before the agency. Pilchuck Contractors, Inc. v. Dep't of Labor & Indus., 170 Wn. App. 514, 517, 286 P.3d 383 (2012). We review findings of fact to determine whether they are supported by substantial evidence and, if so, whether the findings support the conclusions of law. Id. Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. Id. We review questions of law de novo, including an agency's construction of a regulation, but substantial weight is given to an agency's interpretation of a regulation. Id. Proposed decisions and orders are not the decisions and orders of the Board—they do not become the official Board decision until the Board formally adopts them. Stratton v. Dep't of Labor & Indus., 1 Wn. App. 77, 79, 459 P.2d 651 (1969).

II. Type of Equipment

Potelco asserts first that it reasonably believed it was operating a digger derrick and not a crane, and, therefore, WAC 296-155-52901 does not apply.

All cranes and derricks covered in WAC 296-155-52900 and not exempt in subsection (3) of that section must be certified and proof load tested annually by an accredited crane certifier recognized by the Department. WAC 296-155-52901. The crane statutes and regulations define "crane" as "power-operated equipment used in construction that can hoist, lower, and horizontally move a suspended load." RCW 49.17.400(5); WAC 296-155-52902.

The Board found that the Elliot 30105 was a mobile crane.[3] Potelco asserts that the "equipment at issue has all of the characteristics of a digger derrick, and the evidence presented would lead a rational, fair-minded person to find that Potelco reasonably believed it was operating a digger derrick." It claims that it ordered a digger derrick, was told that it had received a digger derrick, and "operated the equipment only as a digger derrick." And, Potelco contends that, other than the data plate, nothing suggested that the equipment was anything other than a digger derrick.

Citing Erection Co., Inc. v. Department of Labor and Industries, 160 Wn. App. 194, 248 P.3d 1085 (2011), Potelco asserts that the Department fails to show how Potelco did not exercise reasonable diligence. In Erection Co., the court stated,

> "Reasonable diligence involves several factors, including an employer's obligation to inspect the work area, to anticipate hazards to which employees may be exposed, and to take measures to prevent the occurrence." Constructive knowledge of a violative condition may be demonstrated by the department in a number of ways, including evidence showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews.

160 Wn. App. at 206-07 (citations omitted) (quoting Kokosing Constr. Co. v. Occupational Safety & Hazard Review Comm'n, 232 F. App'x 510, 521, 2007 WL 1544150, at *2) (6th Cir. 2007)).

---

[3] Potelco assigns error to the trial court's adoption of the Board's finding that the equipment was a crane, but does not argue this issue in its brief. This court will not consider an assignment of error where there is no argument in the brief to support it. DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

The Board found that Potelco, through exercising reasonable diligence, could have known that the equipment was in fact a crane that was not certified prior to being used in crane operations. The Elliott 30105's load chart stated that the equipment was a crane. The data plate and load chart both showed that the Elliott 30105 complied with the ASME B-30.5 standard, which applies specifically to all mobile cranes, but not digger derricks. Elliott's company website identified the 30105 model as a "boom truck," which is a mobile crane.

Furthermore, when Potelco first received the Elliott 30105, it had a metal wire hoist line. The wire line was then switched to a nylon one at Potelco's request. Both Potelco's fleet manager and foreperson understood that companies use digger derricks to conduct high voltage work because they "generally have nylon ropes for winch lines, whereas cranes have steel winch lines."

Potelco points to its employee's testimony to argue that it reasonably believed that the equipment was a digger derrick. It argues that "the truck had all of the unique characteristics of a digger derrick, such as an auger, the nylon hoist line, and pole claw attachment." But, we do not reweigh the evidence on appeal. Zarala v. Twin City Foods, 185 Wn. App. 838, 867, 343 P.3d 761 (2015). Instead, we view this evidence in the light most favorable to the party that prevailed before the Board—here, the Department. Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014).

Substantial evidence supports the Board's finding that Potelco, through exercising reasonable diligence, could have known that the equipment was in fact a crane and not a digger derrick.

III.   Construction Work

Potelco argues second that, because it was performing utility work and not construction work, WAC 296-155-52901 does not apply.

The Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, certification rule applies to "[p]ower-operated cranes and derricks used in construction that can hoist, lower and horizontally move a suspended load." WAC 296-155-52900(1)(a) (emphasis added). WAC 296-155-52902 defines "construction work" as,

> [A]ll or any part of excavation, construction, erection, alteration, repair, demolition, and dismantling of buildings and other structures and all related operations; the excavation, construction, alteration, and repair of sewers, trenches, caissons, conduits, pipelines, roads, and all related operations; the moving of buildings and other structures, and the construction, alteration, repair, or removal of wharfs, docks, bridges, culverts, trestles, piers, abutments, or any other related construction, alteration, repair, or removal work. Construction work does not include the normal day-to-day activities at manufacturing facilities or powerhouses.

Potelco states that on November 6 and 7, 2015, it was replacing existing poles to raise power lines. It argues that this work does not qualify as construction work. And, it asserts that the work it was performing is more similar to the activities covered under WAC 296-155-52900(4)(t), which provides an exemption from the crane certification requirements for "[d]igger derricks when used for activities that are covered under chapter 296-45 WAC,[4] Safety standards for electrical workers."

---

[4] WAC 296-45 applies to "the operation, maintenance, and construction of electric power generation, control, transformation, transmission, and distribution lines and equipment." WAC 296-45-015(1).

The Board found that Potelco's work replacing existing utility poles constitutes construction as defined by the WAC. Potelco ultimately argues that it was exempt from the certification and load testing requirements because it "reasonably believed" that it was using a digger derrick for activities covered by WAC 296-45, which applies to safety standards for electrical workers. But, this exception does not apply to cranes: "Cranes other than digger derricks when used for activities that are covered under chapter 296-45 WAC, Safety standards for electrical workers, or chapter 296-32 WAC, Safety standards for telecommunications are NOT exempt." WAC 296-155-52900(4)(t). We found above that substantial evidence supports the Board's finding that the Elliott 30105 was a mobile crane. Thus, we do not reach the issue of whether Potelco was performing construction work, because it would not be exempt from WAC 296-155-52900 regardless.

IV.   Violation Classification

Alternatively, Potelco argues that this court should downgrade the violation from general to de minimis.

There are several classifications of WISHA citations: willful, serious, general, and de minimis. See RCW 49.17.180(1)-(3); WAC 296-900-14010. Under RCW 49.17.180(3),

> Any employer who has received a citation for a violation . . . where such violation is specifically determined not to be of a serious nature as provided in subsection (6) of this section, may be assessed a civil penalty not to exceed seven thousand dollars for each such violation, unless such violation is determined to be de minimis.

WAC 296-900-14010 provides that a general violation occurs where there are "[c]onditions that could cause injury or illness to an employee but would not result in serious physical harm." Under RCW 49.17.120(2), the Department may develop procedures under which it will issue "a notice in lieu of a citation with respect to de minimis violations which have no direct or immediate relationship to safety or health."

Potelco asserts that "there were no injuries, accidents, or incidents involved in this inspection." But, actual injury is not required for the Department to cite an employer. See, e.g., Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 931, 201 P.3d 407 (2009) ("Nor is the Department required to wait for someone to go deaf before citing the employer.").

"The legislature intend[ed] to promote the safe condition and operation of cranes used in construction work by establishing certification requirements for construction cranes and qualifications for construction crane operators." RCW 49.17.400; LAWS OF 2007, ch. 27, § 1. Potelco's argument that the crane certification violation has no direct relationship to employee health and safety fails.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Mann, A.C.J._   _Dwyer, J._

10