**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

DEPARTMENT OF LABOR AND
INDUSTRIES,

Appellant,

v.

POTELCO, INC.; JEFF LAMPMAN;
and BRET MONTGOMERY;

Respondents.

No. 86066-6-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — The Department of Labor and Industries (Department) issued citations to Potelco, Inc., Jeff Lampman, and Bret Montgomery, (collectively Potelco) for electrical work done installing Verizon 5G equipment on Seattle City Light utility poles. Potelco appealed arguing that its work was exempt from the licensing requirements of ch. 19.28 RCW because the "utility exemption" in RCW 19.28.010(1) applied. The Office of Administrative Hearings (OAH) and the Electrical Board of the State of Washington (Board) affirmed the citations. The King County Superior Court reversed concluding that the utility exemption applied. We agree with the superior court and conclude the utility exemption applied to Potelco's work. We affirm the superior court, reverse the Board's final order, and remand to the Board to vacate the citations.

I

Potelco is a licensed electrical contractor. Potelco's electrical administrator is Jeff Lampman whose role is to ensure that Potelco complies with all applicable laws and regulations. Bret Montgomery is a journey-level, high-voltage lineman and has worked for Potelco off and on since 2007.

Potelco has a multi-year contract with Seattle City Light to perform electrical work on its utility poles. Verizon contracted with Seattle City Light to have 5G equipment installed on Seattle City Light utility poles. Seattle City Light paid Potelco to perform the installations. Between August and December 2020, Potelco obtained 52 permits for installing the Verizon 5G equipment on Seattle City Light utility poles. Potelco began performing these installations in fall 2020.

Montgomery was the project foreman. The project involved installing a disconnect switch on the utility pole. Montgomery testified that installation involved a simple wiring process performed on a box with individual breakers, similar to a fuse box in a residential house.

On December 4, 2020, Annette Lake, an inspector with the City of Seattle inspected one of the installations. While investigating, she learned that Montgomery made the installation, but he was not an 01 certified electrician. Lake reported her concern to her supervisor, Tim Rasmussen, and to Sergey Zinakov, an electrical inspector with the Department. Zinakov investigated and confirmed that Montgomery did not meet the licensing requirements of ch. 19.28 RCW. Prior to the citations, 35 of the 52 installations had been inspected and approved by the City of Seattle.

Zinakov issued noncompliance citations to Potelco, Lampman, and Montgomery. Potelco was cited for employing an individual to perform electrical work for which he was not licensed, a violation of RCW 19.28.271. Lampman was cited for failing as an administrator to ensure all the electrical work performed by Potelco followed the law, a violation of RCW 19.28.061(5)(d). Montgomery was cited for performing electrical work without the proper license, a violation of RCW 19.28.161. The Department fined Potelco, Lampman, and Montgomery $250 for each of the 52 installations, for a total of $13,000 each.

Potelco, Lampman, and Montgomery jointly appealed their citations to OAH. An OAH administrative law judge affirmed the citations in an initial order. The OAH reasoned that none of the exemptions in RCW 19.28.010(1) apply. The OAH specifically rejected the argument that the utility exemption applied. The OAH reduced the penalties to $12,500 because the evidence showed only 50 of the 52 installations had been completed.

Potelco appealed the initial order to the Board. The Board adopted and incorporated the OAH's findings and conclusions of law. Potelco then appealed to the King County Superior Court. The superior court reversed, finding that the Board erroneously interpreted the law when it concluded that the utility exemption did not apply. The court concluded that the utility exemption applied because Potelco and Montgomery performed the work for the purpose of communication under a contract that was under the control of an electric utility. The court reversed the citations under RCW 34.04.574(1) and remanded to vacate the citations.

The Department appeals.

-3-

II

Potelco argues that the citations should be vacated because the work was exempt from the licensing requirements in ch. 19.28 RCW under the "utility exemption" in RCW 19.28.010(1).  We agree.

A

Under the Washington Administrative Procedure Act (APA), ch. 34.05 RCW, we directly review the Board's decision based on the record before the agency.  Pilchuck Contractors, Inc. v. Dep't of Lab. & Indus., 170 Wn. App. 514, 517, 286 P.3d 383 (2012).  When reviewing an agency decision under the APA, we sit in the same position as the superior court and give no deference to the superior court's findings. Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 244, 350 P.3d 647 (2015).  "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity."  RCW 34.05.570(1)(a).  While the Department is the appellant before this court, Potelco has the burden of demonstrating the invalidity of the Board's decision.

We review the Board's conclusions of law de novo.  Whatcom County v. Hirst, 186 Wn.2d 648, 667, 381 P.3d 1 (2016).  An appellant is entitled to relief if the Board erroneously interpreted or applied the law, if the conclusions are not supported by the findings, or if the decision is inconsistent with an agency rule.  Clausing v. State, 90 Wn. App. 863, 870, 955 P.2d 394 (1998).

We interpret statutes and regulations alike, de novo.  Wash. Cedar & Supply Co. v. Dep't of Lab. & Indus, 137 Wn. App. 592, 598, 154 P.3d 287 (2007).  When interpreting statutes and regulations we look first to the plain language.   HomeStreet, Inc. v. State, Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009).  Where the

No. 86066-6-I/5

plain language is unambiguous, the statute or regulation's meaning must be derived from the wording itself.  HomeStreet, 166 Wn.2d at 451.  "Absent ambiguity or a statutory definition, we give words in a statute their common and ordinary meaning. . . . To determine the plain meaning of an undefined term, we may look to the dictionary."  HomeStreet, 166 Wn.2d at 451 (citing Garrison v. Wash. State Nursing Bd., 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

B

RCW 19.28.161(1) requires individuals engaging in the "electrical construction trade" to have certain required electrical certificates or licenses.  "Electrical construction trade" includes "installing or maintaining electrical wires and equipment that are used for light, heat, or power and installing and maintaining remote control, signaling, power limited, or communication circuits or systems."  RCW 19.28.006(7); see also RCW 19.28.161(1), (2).

RCW 19.28.010(1) exempts from ch. 19.28 RCW's licensing requirements "[a]ll wires and equipment that fall within section 90.2(b)(5) of the National Electrical Code, 1981 edition."[1]  Section 90.2(b)(5) of the National Electrical Code (NEC), in turn, provides that installations under the exclusive control of the utility, "for the purpose of communication, or metering; or for the generation, control, transformation, transmission, and distribution of electric energy" are not covered by the NEC.

WAC 296-46B-925(18)(a)(i)-(ii) implements RCW 19.28.010(1) and provides the following definition:

[1] RCW 19.28.010(1) was amended in 2019 by Substitute House Bill 1594.  It added new exemptions but it did not modify the utility exemption.

(a) Utility system exemption – RCW 19.28.010(1) and 19.28.091(1).

(i) Neither a serving electrical utility nor a contractor or subcontractor employed by the serving electrical utility is required to have an electrical contractor's license for work on the "utility system" or on service connections or on meters or other apparatus used to measure the consumption of electricity.

(ii) Exemption from inspection. The work of a serving electrical utility and its contractor(s) on the work exempted by NEC 90.2(b)(5), 1981 edition, is not subject to inspection.

Consistent with RCW 19.28.010, WAC 296-46B-100 defines "utility system" as:

"Utility system" means electrical equipment owned by or under the control of a serving utility that is used for the transmission or distribution of electricity from the source of supply to the point of contact and is defined in section 90.2(b)(5) of the National Electrical Code, 1981 edition (see RCW 19.28.010(1)).

(Emphasis added.) Thus, both RCW 19.28.010(1), and its implementing regulation, WAC 296-46B-925(18)(a)(i)-(ii), incorporate and rely on section 90.2(b)(5) of the NEC.

The parties dispute the meaning of the term "communication" as used in section 90.2(b)(5) of the NEC. The Department argues that the use of "communication" means "communication of the power to the machine." Potelco responds that "communication" includes systems relating to telephone systems, which are the installations that Potelco did here. We agree with Potelco.

The NEC does not define "communication." Nor does ch. 19.28 RCW. Webster's defines "communication" in relevant part to mean "the act or action of imparting or transmitting." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 460 (2002). Webster's defines "communications" in relevant part as a "means of communicating: (1)

a system (as of telephones or telegraphs) for communicating information." WEBSTER'S at 460.

The ALJ and Board ignored the phrase "for the purpose of communication" in NEC 90.2(b)(5). The ALJ's conclusion of law 5.6 and Board's conclusion of law 3.3 concluded that the utility exemption did not apply because the exemption only addresses "work involving utility-owned electrical equipment <u>for the transmission or distribution of electricity</u>," which the Board concluded '[w]as not the case here." (Emphasis added.) While equipment for the transmission or distribution of electricity is one of the categories covered by the utility exemption, NEC 90.2(b)(5) uses "or" to separate "for the purpose of communication" <u>or</u> "metering" <u>or</u> "for the generation, control, transformation, transmission, and distribution of electric energy." (Emphasis added.) The Board ignored that NEC 90.2(b)(5) defines three distinct types of utility installations that are exempt from licensing and instead focused on one.

The Department argues that its interpretation of communication is supported by reading "communication" and "metering" together. But the code does not say communication and metering, it says communication or metering. Based on the plain language of the regulation, the Department's argument fails.[2]

2

The Department argues that "the lynchpin of this case is whether the installation and wiring of the electrical service disconnect box was under the exclusive control of the utility." The Department contends it was not because the work was performed on

---

[2] The Department also advances several policy-based, safety arguments. But these arguments do not defeat the plain meaning of the statute that exempts Potelco from the licensing requirements of ch. 19.28 RCW.

Verizon's project, with Verizon's equipment, and under Verizon's supervision. In contrast, Potelco argues that the contract Potelco was working under was with Seattle City Light, Potelco was paid by Seattle City Light, and the work was performed on Seattle City Light property. We agree with Potelco.

The record demonstrates that Seattle City Light, not Verizon, was in exclusive control. The work Potelco was doing was at the request of, and under direct contract with, Seattle City Light. Potelco was paid for the work by Seattle City Light, not Verizon. The work was being performed on Seattle City Light's utility poles and involved Seattle City Light power lines and connections. Verizon's equipment was being installed on Seattle City Light utility poles only with Seattle City Light's express permission. And the schematics Verizon prepared were submitted to Seattle City Light for its approval and then Seattle City Light provided the approved schematics to its subcontractor, Potelco.

Accordingly, Potelco was exempt from the licensing requirements of ch. 19.28 RCW because the installations were performed for the purpose of communication under the exclusive control of a utility. The Board incorrectly found that the utility exemption did not apply relying solely on the last half of NEC 90.2(b)(5) and ignoring the "for the purpose of communication" section of the code.

For these reasons, the utility exemption applied to Potelco's work. We affirm the superior court, reverse the Board's final order, and remand to the Board to vacate the citations.

No. 86066-6-I/9

Mann, J.

WE CONCUR:

Hazelrigg, ACJ

Smith, C.J.

-9-