[No. 74478-5. En Banc.]
Argued October 19, 2004. Decided January 13, 2005.

AGRILINK FOODS, INC., *Petitioner*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

FAIRHURST and J.M. JOHNSON, JJ., did not participate in the disposition of this case.

*Scott M. Edwards* (of *Perkins Coie, L.L.P.*), for petitioner.

*Robert M. McKenna, Attorney General,* and *Anne E. Egeler, Senior Counsel,* and *David M. Hankins, Assistant,* for respondent.

¶1 OWENS, J. — Agrilink Foods, Inc. (Agrilink) filed suit against the state of Washington, Department of Revenue (DOR), claiming overtaxation on its canned chili products. Agrilink was taxed at the general manufacturing rate of 0.484 percent pursuant to RCW 82.04.240 but claims the

appropriate rate should have been 0.138 percent under RCW 82.04.260(4), which relates to perishable meat products. The lower tax rate applies to "every person engaging within this state in the business of slaughtering, breaking and/or processing perishable meat products and/or selling the same at wholesale." RCW 82.04.260(4). The superior court found in favor of Agrilink, concluding that RCW 82-.04.260(4) does not require a taxpayer's finished product to be "perishable" and that, therefore, Agrilink should have been taxed at the lower rate. The Court of Appeals reversed, holding that RCW 82.04.260(4) should be interpreted narrowly and apply only where the finished product is perishable. We hold that the plain language of RCW 82.04.260(4) encompasses manufacturing activities that result in nonperishable finished products. Accordingly, we reverse the Court of Appeals decision and reinstate the trial court's judgment in favor of Agrilink.

## FACTS

¶2 Agrilink produces "chili con carne" and "chili con carne with beans," requiring raw beef to be (1) ground, (2) mixed with vegetable protein, (3) extruded, (4) brazed at 160 degrees, (5) drained, (6) diced, (7) canned, and (8) cooked until commercially sterile. Clerk's Papers at 23-25. Once canned, the chili has an indefinite shelf life in terms of remaining fit for human consumption, although it is likely to acquire an unsavory taste after four to six years. In short, Agrilink's chili-making process converts raw meat into a nonperishable finished product.

¶3 In 1991, Agrilink requested that DOR reclassify its chili production as taxable under the lower rate pursuant to RCW 82.04.260(4) and claimed a refund was due dating back to 1987. RCW 82.04.260(4) reads in full as follows:

Upon every person engaging within this state in the business of slaughtering, breaking and/or processing perishable meat products and/or selling the same at wholesale only and not at retail; as to such persons the tax imposed shall be equal to the

gross proceeds derived from such sales multiplied by the rate of 0.138 percent.

The parties settled their first dispute in 1997 but left open the final determination of the appropriate taxation rate. In 1999, DOR advised Agrilink it would thereafter be taxed at the general manufacturing rate of 0.484 percent. Agrilink paid the additional $42,330.52 in taxes from June to December 1999 but filed a refund request that ultimately led to the matter before this court.

¶4 After a bench trial upon stipulated facts, Thurston County Superior Court Judge Richard A. Strophy ruled that RCW 82.04.260(4), imposing the lower tax rate on those "processing perishable meat products," applied to Agrilink's chili-making activities discussed above. The court reasoned that each of the activities listed in the statute is clearly disjunctive, indicating that any person undertaking one such activity is entitled to the lower rate. The court went on to conclude that even if the statute were ambiguous as to the question of whether the finished product must be perishable, such ambiguity must be resolved in favor of the taxpayer.

¶5 DOR appealed, and Division Two of the Court of Appeals reversed in an unpublished opinion. *See Agrilink Foods, Inc. v. Dep't of Revenue*, noted at 117 Wn. App. 1037, 2002 WL 32123542, at *1 (2003). The court held that the plain language of RCW 82.04.260(4) requires a perishable finished product in all cases. *Id.* at *3. However, early in the analysis, the court stated that "[g]iven the broad definition of 'processing,' the phrase 'processing perishable meat' includes subjecting perishable meat to a special process that converts it into *nonperishable* (canned) meat." *Id.* at *2 (emphasis added). The court went on to state that "[i]nterpreting the phrase 'processing perishable meat products' to exclude nonperishable end products is consistent with deriving plain meaning from the statute." *Id.* The Court of Appeals based its holding on two lines of reasoning. First, the court concluded that because two other activities listed in RCW 82.04.260(4) result in perishable end products—

that is "slaughtering" and "breaking"—then the third activity, "processing," should be interpreted narrowly to require a perishable end product as well. *Id.* Second, the court concluded that the term "perishable" in the phrase "processing perishable meat products" would be superfluous if the legislature intended the lower rate to apply to manufacturers of nonperishable goods. *Id.*

## ISSUE

¶6 Does the plain language of RCW 82.04.260(4) include or exclude manufacturing activities that result in nonperishable finished products when (1) there is no language in the statute referencing the finished product, (2) other subsections in RCW 82.04.260 do require a specific finished product, and (3) each of the taxable activities is listed using "and/or"?

## ANALYSIS

¶7 *Standard of Review.* Agrilink contends that the Court of Appeals erred in its reasoning and that the trial court correctly concluded that RCW 82.04.260(4) encompasses manufacturing activities that result in nonperishable finished products. Statutory interpretation is a question of law that is reviewed de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Where statutory language is plain and unambiguous, courts will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of contrary interpretation by an administrative agency. *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995); *Wash. Fed'n of State Employees v. State Pers. Bd.*, 54 Wn. App. 305, 309, 773 P.2d 421 (1989). A statute is ambiguous if "susceptible to two or more reasonable interpretations," but "a statute is not ambiguous merely because different interpretations are conceivable." *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996). Finally, we take note that "[i]f any doubt exists as to the meaning of a

taxation statute, the statute must be construed most strongly against the taxing power and in favor of the taxpayer." *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 857, 827 P.2d 1000 (1992).

■■■■ ¶8 *Interpretation of RCW 82.04.260(4).* We conclude that, by its plain language, RCW 82.04.260(4) does not include a perishable finished product requirement. First, we note the complete absence of any express language establishing such a requirement. Had the legislature unequivocally intended to include a perishable finished product requirement, it might have done so by using a number of alternative constructions. Second, other subsections in RCW 82.04.260 do focus on the finished product. For example, RCW 82.04.260(1)(a) speaks of "[w]heat into flour" and "barley into pearl barley." *See also* RCW 82-.04.260(1)(b) (setting the tax rate based on the state of seafood products at the completion of the manufacturing process). Therefore, if the legislature had intended to include a finished product requirement in RCW 82.04.260(4), it would have done so in the same manner. *See United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984) ("where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent"). Finally, each of the activities listed in RCW 82.04.260(4) is separated by the term "and/or," which is commonly understood to allow for a disjunctive reading. *See* THE UNIVERSITY OF CHICAGO, THE CHICAGO MANUAL OF STYLE 5.202 (15th ed. 2003); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 80 (2002). Applying this ordinary understanding of "and/or," the four activities separately entitled to the lower rate are defined as (1) slaughtering, (2) breaking, (3) processing, *or* (4) selling at wholesale. Thus, "processing" alone qualifies Agrilink for the 0.138 percent rate because the second "and/or" negates any requirement that a taxpayer must also sell a "perishable meat product."

¶9 DOR's continued reliance on the strained reasoning of the Court of Appeals is unavailing. The court's suggestion

that it is necessary to impose a perishable finished product requirement with regard to "processing" in order to harmonize that activity with "slaughtering" and "breaking" ignores another commonality among the activities—all three simply refer to handling perishable meat. *See Agrilink Foods*, 2002 WL 32123542, at *2. One could hypothesize that the added expense required to maintain adequate health safety standards in working with perishable meat might well have been the justification for imposing a lower tax rate on those using such products in their manufacturing process. Similarly, the Court of Appeals incorrectly concluded that the word "perishable" is rendered superfluous in the absence of a perishable finished product requirement. *Id.* The word "perishable" modifies "meat products" as to all the activities (slaughtering, breaking, processing, and selling). If "perishable" were not in the statute, the 0.138 percent tax rate would apply equally to all persons "breaking" and "processing" meat that begins in a perishable state *or* a nonperishable state. No one has suggested that the statute applies to those who use nonperishable meat from start to finish. It follows that "perishable" has a limiting effect and is certainly not rendered superfluous, as the court suggested. In sum, the Court of Appeals did not undertake an appropriate plain language analysis but, rather, added a requirement to RCW 82.04.260(4) that the statutory text does not dictate.

¶10 DOR also argues that the Court of Appeals decision is justified because RCW 82.04.260(4) calculates the tax rate by applying the 0.138 percent rate to the sale proceeds of a business's finished products. The implication, DOR reasons, is that the plain emphasis of the statute is on the finished product (i.e., the product sold), not simply the manufacturing activities leading to the finished product. Under Washington's business and occupations tax scheme relating to manufacturing, the *measure* of the tax is generally based upon the actual sale proceeds, but the *subject* of the tax is the manufacturing activity itself. *See Fibreboard Paper Prods. Corp. v. State*, 66 Wn.2d 87, 90, 401 P.2d 623

(1965) (stating that "[i]t is the activity of manufacturing, not the product, which gets taxed"); *see also* JEROME R. HELLERSTEIN & WALTER HELLERSTEIN, STATE AND LOCAL TAXATION: CASES AND MATERIALS 23 (6th ed. 1997) (noting that the subject of the tax is the "activity, event, privilege, or specific property right," while the measure is the "yardstick or base to which the tax rate is applied"). Because the activity, rather than the finished product, is the target of the tax, we cannot accept DOR's reasoning that the plain language of RCW 82.04.260(4) necessarily imposes limitations on the type of finished product.[1]

## CONCLUSION

¶11 The text of RCW 82.04.260(4) cannot be read to require a perishable finished product. Had the legislature intended to impose such a requirement, it could have done so with relative ease (as exemplified in surrounding sub-sections), but it did not. We therefore decline to read into RCW 82.04.260(4) that which is absent. Instead, we hold that Agrilink's chili con carne manufacturing process constitutes "processing perishable meat products" subject to a taxable rate of 0.138 percent. The opinion of the Court of Appeals is reversed and the trial court's judgment is reinstated.

ALEXANDER, C.J.; C. JOHNSON, MADSEN, SANDERS, BRIDGE, and CHAMBERS, JJ.; and APPELWICK and IRELAND, JJ. Pro Tem., concur.

---

[1] Although not essential to our holding, we note that, were we to conclude that RCW 82.04.260(4) is ambiguous, Agrilink would be entitled to the general presumption that ambiguous tax statutes must be construed in favor of the taxpayer. *Ski Acres*, 118 Wn.2d at 857. We further note that two arguments raised by DOR relating to the construction of an ambiguous statute were subject to a motion to strike by Agrilink. Agrilink's motion to strike is denied. However, we need not address DOR's statutory construction arguments because RCW 82-.04.260(4) is not ambiguous.