[No. 85556-1.   En Banc.]
Argued October 11, 2011.     Decided January 12, 2012.

TESORO REFINING AND MARKETING COMPANY, *Respondent*, v. THE
DEPARTMENT OF REVENUE, *Petitioner*.

*Robert M. McKenna, Attorney General,* and *Donald F. Cofer* and *Jeffrey T. Even, Assistants,* for petitioner.

*George C. Mastrodonato* and *Michael B. King* (of *Carney Badley Spellman PS*), for respondent.

*Dirk J. Giseburt* and *Michele G. Radosevich* on behalf of Dot Foods, Inc., amicus curiae.

*Kristopher I. Tefft* on behalf of Association of Washington Business, amicus curiae.

*Robert L. Mahon III* and *Gregg D. Barton* on behalf of Council on State Taxation, amicus curiae.

*Norman J. Bruns* and *Michelle DeLappe* on behalf of Institute for Professionals in Taxation, amicus curiae.

¶1 J.M. JOHNSON, J. — Washington's Business and Occupation (B&O) tax system imposes taxes on refining of oil products and, separately, on sales. The gross income from activities, from which each tax is calculated, can be reduced by certain statutory deductions. The issue here is whether the RCW 82.04.433(1) deduction applies to reduce B&O tax on sales and whether the statute allows a reduction of B&O tax for processing the same product (i.e., manufacturing activities).

¶2 The Court of Appeals held that Tesoro Refining and Marketing could deduct the amount of its "offshore"[1] bunker fuel sales from its B&O taxes on manufacturing activities. The Department of Revenue (DOR) seeks review of this decision and contends that the offshore bunker fuel sales deduction applies to only B&O taxes on wholesale and retail sales, and not to reduce tax on manufacturing activities. DOR makes two main arguments: (1) the common and ordinary meaning of the plain language in RCW 82.04-.433(1) demonstrates that the deduction should apply only to B&O taxes on wholesale and retail sales and (2) the legislature adopted a "clarifying" amendment in 2009 to the B&O tax deduction in RCW 82.04.433(1), which should not be viewed as a retroactive change of tax law in violation of the due process clause to the United States Constitution.

¶3 We reverse the Court of Appeals and affirm the Thurston County Superior Court's grant of summary judgment to DOR. We hold that the plain language of RCW 82.04.433(1) created for "sales of fuel" indicates that the B&O tax deduction applies to only B&O taxes on wholesale

---

[1] We use the term "offshore" to denote the requirement in former RCW 82.04-.433(1) (1985) that the bunker fuel sales be intended "for consumption outside the territorial waters of the United States."

and retail sales, not on manufacturing. As our holding rests on statutory grounds, we need not address the constitutional issue of retroactivity.

## FACTS AND PROCEDURAL HISTORY

¶4 Tesoro owns and operates a refinery near Anacortes, Washington, and it processes crude oil from Alaska, Canada, and other foreign sources. Among Tesoro's products is a heavy fuel known as "marine bunker fuel," which is the residue fuel remaining after gasoline and distillate fuel are extracted from crude oil. The majority of bunker fuel produced by Tesoro is shipped for sale to customers engaged in foreign commerce. Between December 1, 1999, and December 31, 2007, Tesoro's Anacortes refinery made more than 9,700 individual sales of bunker fuel for consumption outside the United States.

¶5 The Washington State Legislature, in enacting and defining B&O taxes on oil products, created a tax deduction for the amount of tax "derived from sales of fuel for consumption outside the territorial waters of the United States, by vessels used primarily in foreign commerce." Former RCW 82.04.433(1) (1985). In 1986, DOR issued WAC 458-20-175, which required the seller of fuel to obtain a certificate of sale from the buyer in order to qualify for the RCW 82.04.433(1) tax exemption. There is no dispute in this case that Tesoro obtained the requisite certificates. DOR also issued an unpublished determination in 1993 that held that RCW 82.04.433 may not be limited to wholesalers and retailers. Clerk's Papers (CP) at 221-25. Furthermore, other similar unpublished determinations were issued in 1988 and 1993. CP at 294-95.

¶6 On its monthly tax returns from 1999-2007, Tesoro reported its bunker fuel sales on both the " 'Manufacturing' " B&O tax line and the " 'Wholesaling and Retailing' " B&O tax line. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 159 Wn. App. 104, 108, 246 P.3d 211 (2010). Additionally, Tesoro took a single multiple activities tax credit, pursuant

to former RCW 82.04.440 (2007), reducing the wholesaling or retailing B&O tax otherwise payable. *Tesoro*, 159 Wn. App. at 108.

¶7 After completing a detailed DOR audit of the Anacortes refinery, however, Tesoro requested a partial tax refund in the amount of $2,550,867, claiming the RCW 82.04.433(1) tax deduction against amounts paid in B&O tax on manufacturing during the period of December 1, 1999, through April 30, 2004. *Tesoro*, 159 Wn. App. at 109. This request was denied, and Tesoro filed an administrative appeal with DOR's appeals division. *Id.* at 109-10. The appeals division also denied Tesoro's refund request on the ground that the deduction applied only to taxes paid under the "wholesaler and retailer" B&O tax line. *Id.* While the administrative appeal was pending, Tesoro continued to pay an additional $4,128,997[2] in B&O taxes on its manufacturing activities between May 1, 2004, and December 31, 2007. *Id.* at 109-10.

¶8 Subsequently, Tesoro appealed to the Thurston County Superior Court, and the parties moved for partial summary judgment on the issue of whether Tesoro qualified for the RCW 82.04.433(1) deduction against manufacturing activities B&O taxes. *Tesoro*, 159 Wn. App. at 110. One day before the scheduled hearing, the governor signed a clarifying amendment to RCW 82.04.433 into law that expressly limited the applicability of the deduction to wholesale and retail activities, thereby more expressly excluding manufacturing activities. *Tesoro*, 159 Wn. App. at 110. This new amendment purported to apply " 'both prospectively and retroactively' " to 1985 when the tax deduction was originally enacted. *Id.* (quoting LAWS OF 2009, ch. 494, § 4).

¶9 The Thurston County Superior Court granted summary judgment to DOR without addressing the issue of

---

[2] As a result, Tesoro contends that it is entitled to a refund from DOR in the total amount of $6,679,864. *Tesoro*, 159 Wn. App. at 110 n.5.

retroactivity. *Id.* Tesoro appealed, and the Court of Appeals reversed. *Id.* at 110, 120. The Court of Appeals held that the plain language of the former RCW 82.04.433 deduction could be deducted from Tesoro's manufacturing activities and that the legislature could not apply the clarifying amendment retroactively. *Tesoro*, 159 Wn. App. at 119-20. We granted review. *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue*, 171 Wn.2d 1016, 253 P.3d 392 (2011).

ANALYSIS

¶10 The issue before us is one of statutory interpretation, which is an issue of law that we review de novo. *City of Seattle v. Burlington N. R.R.*, 145 Wn.2d 661, 665, 41 P.3d 1169 (2002). "The primary objective of any statutory construction inquiry is 'to ascertain and carry out the intent of the Legislature.'" *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 451, 210 P.3d 297 (2009) (quoting *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991)). When determining the intent of the legislature, we first look to the plain language of the statute. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the plain language is unambiguous, we give the words their common and ordinary meaning. *Garrison v. Wash. State Nursing Bd.*, 87 Wn.2d 195, 196, 550 P.2d 7 (1976). "Where statutory language is plain and unambiguous, courts will not construe the statute but will glean the legislative intent from the words of the statute itself, regardless of contrary interpretation by an administrative agency." *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005).

¶11 The State of Washington imposes B&O taxes on those engaged in manufacturing activities or wholesale and retail sales. RCW 82.04.240, .250, .270. Individuals or persons engaged in both of these activities are subject to liability under separate B&O tax provisions. RCW 82.04.440(1). In 1985, the legislature created a fuel sales

tax deduction, codified under former RCW 82.04.433(1): "In computing tax there may be deducted from the measure of tax . . . amounts derived from sales of fuel for consumption outside the territorial waters of the United States, by vessels used primarily in foreign commerce."

¶12 Tesoro contends that the language of the statute should allow a deduction against both B&O taxes on manufacturing activities and B&O taxes on wholesale and retail sales. According to Tesoro, the legislature intended the deduction to apply to all B&O taxes because of the inclusion of "[i]n computing tax" language. Former RCW 82.04.433(1).

¶13 The plain language of the RCW 82.04.433(1) tax deduction, as enacted by the legislature in 1985, is to the contrary. The legislative use of the language "derived from *sales of fuel*" refers to wholesale and retail sales, and not manufacturing activities. *Id.* (emphasis added). WAC 458-20-136(4) indicates that "[p]ersons who manufacture products in this state are subject to the manufacturing B&O tax upon the value of the products . . . ." Even if " 'value of products' [is] determined by 'gross proceeds of sales,' " WAC 458-20-112, B&O tax liability will still attach even when there is no sale because the act of manufacturing the products is the triggering event. *See* RCW 82.04.220. This supports the conclusion that "derived from sales of fuel" refers to wholesale and retail sales, and not manufacturing activities. Former RCW 82.04.433(1).

¶14 Tesoro also argues that DOR should be bound by earlier agency opinion on the scope of the RCW 82.04.433(1) tax deduction. According to Tesoro, DOR issued an unpublished determination in 1993 to U.S. Oil & Refining Company in favor of applying the deduction to all measures of B&O tax, and not just B&O taxes on wholesale and retail activities. CP at 221-25. Additionally, Tesoro cites two similar unpublished determinations from 1988 and 1993. CP at 294-95. Based on *Agrilink Foods*, however, we glean legislative intent from the text of the statute, regardless of

incidental and contrary agency interpretations. *Agrilink Foods*, 153 Wn.2d at 396. Tesoro's argument would endorse a construction of the statutory RCW 82.04.433(1) exemption that would give a double deduction to taxpayers. The United States Supreme Court has articulated the principle that "the [United States] Code should not be interpreted to allow respondent the 'practical equivalent of double deduction,' absent a clear declaration of intent by [the legislature]." *United States v. Skelly Oil Co.*, 394 U.S. 678, 684, 89 S. Ct. 1379, 22 L. Ed. 2d 642 (1969) (citation omitted) (quoting *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68, 54 S. Ct. 596, 78 L. Ed. 1127 (1934)). The same principle is applicable with respect to the Washington State tax code, as adopted by our legislature. Once a tax is adopted, the legislature may adopt exemptions, but such are narrowly construed. *Budget Rent-A-Car of Wash.-Or., Inc. v. Dep't of Revenue*, 81 Wn.2d 171, 174-75, 500 P.2d 764 (1972).

¶15 Furthermore, Tesoro's argument would confuse the benefits of the multiple activities tax credit with the double tax deduction that it seeks with this lawsuit. *See Tesoro*, 159 Wn. App. at 108. This simply confirms our common-sense reading of the plain language of the statute. During the time period at issue, the Washington State tax code provided a multiple activities tax credit for the manufacturing B&O tax payable to DOR. RCW 82.04.440(2). The existence of such tax credit is inconsistent with a legislative intent to create a double tax deduction because the legislature dealt with the B&O tax liability on both manufacturing activities and wholesale or retail sales by enacting the tax credit. Thus, we find that the plain language of RCW 82.04.433(1) indicates that the B&O tax deduction applies to only B&O taxes on wholesale and retail sales, and Tesoro would not be entitled to the B&O tax deduction for its

manufacturing activities during the relevant time period of December 1, 1999, to December 31, 2007.[3]

CONCLUSION

¶16 We reverse the Court of Appeals and affirm the Thurston County Superior Court's grant of summary judgment to DOR. The plain language of RCW 82.04.433(1), providing a credit for tax "derived from sales of fuel for consumption outside the territorial waters of the United States," indicates that the B&O tax deduction applies to only B&O taxes on wholesale and retail sales, and Tesoro and similar taxpayers should not gain the benefit of a double deduction in addition to the multiple activities tax credit. We decline to address the constitutional issue of retroactivity and grant summary judgment to DOR on statutory grounds.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ.; and ALEXANDER, J. PRO TEM., concur.

---

[3] We need not address the constitutional issue of retroactivity because of the principle that a court should decide a case on nonconstitutional grounds if at all possible. *HJS Dev., Inc. v. Pierce County ex rel. Dep't of Planning & Land Servs.*, 148 Wn.2d 451, 469 n.75, 61 P.3d 1141 (2003) ("It is well established that if a case can be decided on nonconstitutional grounds, an appellate court should decline to consider the constitutional issues.").