# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROSE DAVIS as Personal Representative of the Estate of RENEE L. DAVIS, deceased, | ) ) ) | No. 79696-8-I |
| | ) | |
| Appellant, | ) ) | DIVISION ONE |
| | ) | |
| v. | ) ) | |
| | ) | |
| KING COUNTY, a political subdivision of the State of Washington, TIMOTHY LEWIS, Deputy, King County Sheriff's Office, individually and in his official capacity acting under the color of state law; NICHOLAS PRITCHETT, Deputy, King County Sheriff's Office, individually and in his official capacity acting under the color of state law; JOHN URQUHART, in his individual capacity; MITZI JOHANKNECHT, Sheriff, King County Sheriff's Office, in her official capacity; JOHN DOES 1-10, individually and in their official capacities acting under the color of state law, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| | ) | |
| Respondents. | ) ) | |

MANN, C.J. — Washington's felony bar statute, RCW 4.24.420, creates a complete defense to any action for damages for personal injury or wrongful death if the person injured or killed was engaged in the commission of a felony at the time of the

injury or death and the felony was a proximate cause of the injury or death. On its face, the statute applies even if the defendant was negligent or unreasonable.

The estate of Renee Davis appeals the trial court's summary judgment order dismissing its wrongful death action. Davis was fatally shot by law enforcement during a mental health crisis where she was suicidal. On appeal, the estate contends that the trial court erred in granting the defendants' summary judgment motions because the court improperly inferred Davis's specific intent to assault the deputies, made credibility determinations about the deputies' version of events, and because issues of material fact exist as to whether the defendants' negligence was the proximate cause of Davis's death. The estate also contends that the trial court erred because the felony bar statute requires a criminal conviction or admission to felonious conduct before it can bar a wrongful death action. We affirm.

I.

On October 21, 2016, T.J. Molina approached King County Sheriff's Office Deputy Nicholas Pritchett on the powwow grounds at the Muckleshoot Indian Reservation during his patrol shift.[1] Molina was worried about his girlfriend, Davis, who had been sending him concerning text messages.

At 6:21 p.m., Davis sent Molina a text message saying "[w]ell come and get the girls or call 911 I'm going to shoot myself." Another text message followed at 6:28 p.m. that said "[t]his is to show you I'm not lying," with a blurry photo that appeared to be an injury. It was unclear from the photo the severity and location of the potential injury.

---

[1] Davis was a member of the Muckleshoot Indian Tribe. It is common for residents of the Reservation to seek out law enforcement officers for help rather than call 911.

Molina sought out Pritchett's help because Davis had two of her three children with her and was also pregnant with a fourth child. Pritchett was familiar with both Davis and Molina because he had responded to domestic violence incidents at Davis's home concerning Davis's ex-boyfriend. Molina showed Pritchett the text messages from Davis. Pritchett thought the picture could have been an injury or a "photo off the internet," but because the image was blurry, he could not be sure. Molina told Pritchett that Davis had access to a rifle and a handgun.

Pritchett advised dispatch of a "suicidal female, possibly armed with a rifle and who has her two children with her," texting "pictures of fresh injuries, unsure who is injured," and "female is Davis, Renee possibly born in 1993" at 6:37 p.m. Pritchett indicated that he would conduct a welfare check. Dispatch advised Pritchett that backup was approximately 26 minutes away. Pritchett asked dispatch to check if any units from the Auburn Police Department were available to respond. At the same time, Deputy Lewis was commuting home when he overheard Pritchett's radio transmissions and responded. Lewis had been attending a firearms training at the King County Sheriff's Office range.

Pritchett parked a few blocks away from Davis's home at 6:44 p.m. Pritchett approached the home on foot to survey the area and look for signs of distress. Pritchett returned to his vehicle to wait for backup. Lewis arrived at approximately 6:45 p.m. Pritchett quickly told Lewis about a tree he observed outside Davis's residence where they could shelter if there was gunfire. Lewis knew only what he heard over the radio and did not know that Davis was pregnant or that Pritchett had prior contacts with Davis.

Together, the deputies approached Davis's house on foot at approximately 6:52 p.m. Neither heard any noise from the house or indication that the occupants were in distress. Both deputies loudly knocked on the front door, siding, and windows of the house. They repeatedly yelled "Sheriff's Office!" "It's the police!" and "Come to the door!" to get Davis's attention. Lewis tried to remove the screen from the window when he saw Davis's two children in the living room and asked them to open the front door; Davis's three-year-old child complied. Both children appeared to be under the age of five.

The deputies entered the home, Lewis had his weapon drawn. After quickly assessing the children's well-being, Lewis moved the children to the front door foyer while Pritchett checked the living room and kitchen area. Lewis asked the children "Where's mommy's room?" and one of the children pointed to a door down the hallway. Lewis covered the hallway and the two bedrooms at the back of the hallway while Pritchett approached the first bedroom. The doorknob had a child safety device on it, and Pritchett was unable to maneuver the device because he had on gloves. Pritchett kicked the child safety device off the doorknob.

The deputies entered Davis's bedroom and observed her lying in her bed, covered in a blanket up to her neck, staring blankly at the door. The deputies instructed Davis to show her hands; Lewis recalled that Davis did not respond, while Pritchett recalled that Davis said "no." Lewis pointed his weapon at Davis while Pritchett pulled the blanket off Davis. Both deputies saw a gun, Lewis recalled that Davis's right hand was over the top of or below the gun, with the muzzle facing the foot of the bed, while Pritchett recalled that the gun was in Davis's right hand resting on her legs. Both

deputies observed a magazine in Davis's left hand, but could not tell whether the gun was loaded or unloaded.

Lewis ordered Davis to "drop the gun," while Pritchett yelled "gun." Pritchett attempted to move back toward the door. Both officers testified that she raised the gun and pointed it directly at them. Both Lewis and Pritchett fired their weapons. Three bullets hit Davis. Pritchett announced "shots fired" over the air. Davis slumped over, fell off the bed, and stated that the gun was not loaded.

Lewis heard the children screaming and left Pritchett alone in the bedroom with Davis. Lewis encountered Auburn Police Officer, Derek Pederson, as he took the children outside. After removing the children from the home, Pederson and Lewis went back to Davis's bedroom. Pederson recalled seeing Davis's gun in her hand while she was on the floor, while Pritchett recalled putting the gun in his utility belt as Lewis reentered the bedroom. Pedersen moved the bed away from Davis so that medical personnel could provide treatment. Pritchett called for aid and moved Davis to a location where aid could be provided. Fire department medics, who had been waiting outside entered and performed lifesaving measures. Medics were unable to revive Davis.

On January 3, 2018, the estate filed a wrongful death action against King County, Pritchett, Lewis, former King County Sheriff Urquhart and Sheriff Johanknecht[2] for negligence, battery, negligent use of excessive force, and outrage. King County moved for summary judgment to dismiss all of the estate's claims based on the felony bar statute, that the deputies had no legal duty to Davis, that Washington does not permit a

---

[2] Davis's estate voluntarily dismissed Johanknecht as a defendant.

negligent investigation against police, the deputies' actions were intentional, justified, and reasonable, the facts do not support a claim for battery because the deputies were justified in using deadly force when confronted with a deadly threat, and the elements of outrage could not be met. The estate responded that RCW 4.24.40 required a felony conviction or admission by the plaintiff and that Davis was accused of committing assault in the first degree, which requires specific intent to cause bodily harm or an apprehension of bodily harm. At oral argument, the estate argued that "the jury could infer that [Davis] didn't intend to create this apprehension—the specific intent to create an apprehension of bodily harm" but did not present facts creating an issue of fact that Davis pointed her gun at the deputies.

The trial court granted summary judgment in favor of the defendants, concluding that, while there may be disputes of material fact related to the reasonableness of the deputies' conduct, RCW 4.24.420 barred Davis's action. The estate appeals.

II.

"We review summary judgment motions de novo, engaging in the same inquiry as the trial court." Vargas v. Inland Washington, LLC, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). "When reviewing summary judgment motions, we consider all disputed facts in the light most favorable to the nonmoving party." Vargas, 194 Wn.2d at 728 (internal quotes omitted). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." CR 56. Estate of Lee ex rel. Lee v. City of Spokane, 101 Wn. App. 158, 166, 2 P.3d 979 (2000).

At issue in this appeal is whether the felony bar statute, RCW 4.24.420, bars the estate's action. RCW 4.24.420 provides that

> [i]t is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death. However, nothing in this section shall affect a right of action under 42 U.S.C. Sec. 1983.

Before addressing each of the estate's arguments, we acknowledge that Davis's death is tragic and echo the trial court's sentiment that the application of RCW 4.24.420 here is problematic because it precludes claims where law enforcement officers' actions and training may have been unreasonable, given their knowledge that the individual they were confronting was suicidal and armed. RCW 4.24.420 prevents courts and juries from reaching the issue of whether law enforcement's negligence resulted in the loss of life. The statute is clear and precludes our evaluation of these policy questions.

A.

The estate contends that only a jury may infer, from circumstantial evidence, the requisite specific intent that the decedent was "engaged in the commission of a felony" and therefore, the trial court erred in granting summary judgment because it infringed upon the jury's province. We disagree.

RCW 9A.36.021(1)(c) provides that "[a] person is guilty of assault in the second degree if he or she . . . [a]ssaults another with a deadly weapon." RCW 9A.36.031 provides "[a] person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree: (g) Assaults a law

enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault."

The statute does not define "assault;" thus, we look to the common law definition. State v. Abuan, 161 Wn. App. 135, 154, 257 P.3d 1 (2011). "Washington recognizes three common law definitions of 'assault': '(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm.'" Abuan, 161 Wn. App. at 154 (citing State v. Elmi, 166 Wn.2d 209, 215, 207 P.3d 439 (2009)). Finally, "specific intent either to create apprehension of bodily harm or to cause bodily harm is an essential element of assault in the second degree." State v. Byrd, 125 Wn.2d 707, 713, 887 P.2d 369 (1995).

The estate identifies the following factors for why there is a dispute about whether Davis formed the requisite intent for assault in the second or third degree: "her mental state, history of depression and abuse, pre-shooting statements and conduct, suicidal ideation, the unloaded gun, personal history and characteristics, as well as the Deputies' own negligent conduct, pre-shooting tactical errors, and completely unnecessary and rushed confrontation of [Davis] at gunpoint in her bedroom less than a minute after entering her home."

But, even viewing these facts in the light most favorable to Davis, there is no dispute that both officers testified that Davis raised and pointed the gun directly at them before they shot. The act of pointing a gun at someone supports a determination that there was an intent to create apprehension of bodily injury. The trial court did not err when it concluded that there was not a dispute of material fact about whether Davis

formed the requisite intent to find that she was engaged in the commission of a felony at the time of her death.

B.

The estate next contends that only a jury can weigh evidence and make credibility determinations and that the trial court erred by invading the jury's exclusive province by inferring specific intent from the circumstantial evidence. We disagree.

"It is true that a court should not resolve a genuine issue of credibility at a summary judgment hearing." Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991). "An issue of credibility is present only if the party opposing the summary judgment motion comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue." Howell, 117 Wn.2d at 626. "A party may not preclude summary judgment by merely raising argument and inference on collateral matters." Howell, 117 Wn.2d at 626-27.

> The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and that the opposing party may not merely recite the incantation "Credibility," and have a trial on the hope that a jury may disbelieve factually uncontested proof.

Amend v. Bell, 89 Wn.2d 124, 127, 570 P.2d 138 (1977).

There is no evidence suggesting that Davis did not point her gun at the deputies. Instead, the estate contends "[b]ecause a reasonable juror could conclude that because the involved officers lied about circumstances surrounding the shooting, and that therefore 'the officers also lied about the facts that would support their claim that [Davis] posed an imminent threat of harm,' summary judgment was inappropriate." The estate cites an unpublished decision from the United States District Court for the Central

District of California, J.J.D. v. City of Torrence, No. CV 14-07463-BRO, 2016 WL 6674996, at *5 (C.D. Cal. Mar. 22, 2016) (court order), to support its argument. In that case, however, the officers had not provided an account of the shooting that matched the physical evidence. This created a dispute of material fact, from which a reasonable juror could conclude the officers had lied. Here, there is no physical evidence to suggest that Davis did not raise her gun or that the deputies lied. The estate points to small inconsistencies in the deputies' version of events, including how Davis was holding the gun, and how the gun was handled after the shooting. These inconsistencies are insufficient to create a dispute of material fact on the issue of whether Davis raised her gun. There is no evidence that the gun was planted or not in Davis's immediate possession at the time of the shooting. Thus, the trial court did not err when it granted summary judgment because there was no genuine issue of material fact.

C.

The estate next contends that the trial court erred when it granted summary judgment under RCW 4.24.420 because there must be a felony conviction or admission to felonious conduct before the court can bar a wrongful death action under RCW 4.24.420. We disagree.

We review statutory interpretation de novo. Tesoro Ref. & Mktg. Co. v. State, Dep't of Revenue, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012). "The primary objective of any statutory construction inquiry is to ascertain and carry out the intent of the Legislature." Tesoro, 173 Wn.2d at 556. First, we look to the statute's plain language and if the language is unambiguous, our inquiry ends. State v. Armendariz, 160 Wn.2d

106, 110, 156 P.3d 201 (2007). "The statute is to be enforced in accordance with its plain meaning." Armendariz, 160 Wn.2d at 110. "Where the plain language of the statute is subject to more than one reasonable interpretation, it is ambiguous." When a statute's language is ambiguous, we may resort to legislative history to discern legislative intent. Armendariz, 160 Wn.2d at 110-11.

Here, the statute's language is unambiguous. The plain language of the statute does not require that a person be convicted of a felony or admit to felonious conduct before RCW 4.24.420 is a complete defense to a civil action. Instead, the language states "[i]t is a complete defense to any action for damages for personal injury or wrongful death that the person injured or killed was engaged in the commission of a felony." RCW 4.24.420 (emphasis added). A wrongful death action will likely never involve a conviction or admission to felonious conduct because the death would proceed any possible trial or admission. When possible, we "give effect to every word, clause and sentence of a statute." Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985). The argument advanced by the estate reads the language "wrongful death" out of the statute by making the defense unavailable in almost all wrongful death actions. We read the statute to specifically contemplate its applicability in wrongful death actions.

The trial court did not err by applying RCW 4.24.420 on summary judgment when there was no criminal conviction or admission to felonious conduct.

D.

Finally, the estate contends that the trial court erred in granting summary judgment because there is a dispute of material fact on the issue of causation. We disagree.

Proximate cause is generally a question for the jury, but it is a question of law "when the facts are undisputed and the influences therefrom are plain and incapable of reasonable doubt or difference of opinion." Graham v. Public Emps. Mut. Ins. Co., 98 Wn.2d 533, 539, 656 P.3d 1077 (1983). Proximate cause consists of two elements: cause in fact and legal causation. Sluman v. State, 3 Wn. App. 2d 656, 701, 418 P.3d 125 (2018). Cause in fact concerns the "but for" consequences of an act: those events that the act produced in a direct, unbroken sequence, and that would not have resulted had the act not occurred. Sluman, 3 Wn. App.2d at 701. "Legal causation rests on considerations of logic, common sense, policy, justice, and precedent as to how far the defendant's responsibility for the consequences of its actions should extend." Sluman, 3 Wn. App. 2d at 701. "The inquiry is whether a reasonable person could conclude that there is a greater probability that the conduct in question was the proximate cause of the plaintiff's injury than there is that it was not." Mehlert v. Baseball of Seattle, 1 Wn. App. 2d 115, 118-19, 404 P.3d 97 (2017).

Even if the estate is correct, and the deputies' response was not appropriate given the circumstances and what they knew about Davis during the encounter, that is not the issue before us. Instead, we are asked whether Davis's commission of a felony was a proximate cause of her death. For proximate cause, we look at the unbroken sequence of events, from the felonious conduct to the injury. The statute does not take

into account the deputies' conduct prior to the felonious conduct. The statute states it is a complete defense when "the person injured or killed was engaged in the commission of a felony at the time of the occurrence causing the injury or death and the felony was a proximate cause of the injury or death." RCW 4.24.420. Thus, our inquiry concerns Davis's conduct and whether it was a proximate cause of her death. Viewing the facts in the light most favorable to Davis, there are no facts to support that she did not point her gun at the deputies. But for her conduct, the deputies would not have shot Davis. There is no dispute of material fact on the issue of causation because there are no facts to support that Davis did not raise her gun. The trial court did not err.

The opinion of the estate's law enforcement expert, Leo Poort does not create a dispute of material fact on the issue of causation. Poort concluded that the deputies

> acted without proper cause or justification in fatally shooting [Davis] who was known by the deputies to be suicidal. Lewis and Pritchett far fell below the applicable standard of care here, and did not act as reasonable Sheriff's Deputies. Indeed, it would have been obvious to any Sheriff Deputy exercising his or her professional judgment that the acts taken by Lewis and Pritchett would put [Davis] at an unnecessary risk of serious harm and/or death.

> I have also concluded, to a reasonable degree of professional certainty, that the KCSO through its failure to adequately train and supervise its deputies, created an environment where the conduct of these deputies on October 21, 2016 was excessive. The deputies loudly entered [Davis's] home and forcibly entered her bedroom, thereby precipitating a fatal confrontation with the suicidal [Davis]. The KCSO far fell below the applicable standard of care here. Indeed, it would have been obvious to any Chief or Sheriff exercising his or professional judgment that KCSO's failure to train and supervise would result in suicidal persons, such as [Davis], at additional and unnecessary risk of serious harm and/or death.

Rather than opine on Davis's actions, Poort's opinion focuses on the negligent conduct of the deputies. The issue of the deputies' negligence, however, is a separate

-13-

issue from whether the felony bar statute acts as a complete defense to any negligence claim, regardless of whether the elements of negligence are met. It is not enough to show that the deputies were independently negligent, the estate must show that facts exist to establish a dispute of material fact as to whether Davis pointed her gun at the deputies.

Additionally, the estate cannot show that, had the deputies acted differently, that Davis would not have still pointed her gun at them upon entering the room. When the estate's police practice's expert, D.P. Van Blaricom, was deposed, he was asked if he agreed that the deputies acted appropriately once Davis pointed a gun at them. Van Blaricom responded that "if someone points a gun at you, you may shoot them" and there would be no way to safely know whether a gun was loaded. Without facts demonstrating the possibility that Davis did not point her gun at deputies, the estate cannot create a dispute of material fact sufficient to overcome the felony bar statute.

Finally, the language of RCW 4.24.420 indicates that it applies if "the felony was a proximate cause of the injury or death." (Emphasis added). Washington courts have long recognized that there can be more than one proximate cause of an injury and that the plaintiff should not be forced to prove that the defendant's negligence was the sole cause of the injury. Mehlert, 1 Wn. App. 2d at 118; N.L. v. Bethel Sch. Dist., 186 Wn.2d 422, 378 P.3d 162 (2016). The statute only requires a defendant show that the felony was a proximate cause of the injury or death, not the only proximate cause. Thus, while there may be multiple causes of a plaintiff's injury, a defendant need only show that the felony was a cause for the felony bar statute to apply as a complete defense. Since the estate was unable to present any evidence to create a dispute of material fact as to

whether Davis pointed her gun at the deputies, there is no dispute of material fact on the issue of causation under RCW 4.24.420.

We affirm.

_____Mann, C.J._____

WE CONCUR:

_____Chun, J._____          _____Appelwick, J._____