**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

May 2, 2023

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MATTHEW HOWARD AND CYNTHIA FORLAND, Owner, | No. 56797-1-II |
| Respondents, | |
| v. | |
| JAMES PINKERTON, and any other persons occupying: 2115 N. Tower Ave, Centralia, WA 98531, | PUBLISHED OPINION |
| Appellant. | |

LEE, J. — In this unlawful detainer action, James Pinkerton appeals the superior court's order granting Matthew Howard and Cynthia Forland's motion for a writ of restitution. Pinkerton argues that the superior court erred by ordering the writ of restitution, in effect denying his motion to dismiss, based on an incorrect interpretation of RCW 59.18.650(2)(d). Pinkerton requests attorney fees and costs on appeal. Howard and Forland also request attorney fees on appeal.

We hold that the superior court erred by granting the writ of restitution based on an incorrect interpretation of RCW 59.18.650(2)(d). Accordingly, we reverse the order granting the writ of restitution and remand for the superior court to dismiss the case. We also award attorney fees and costs on appeal to Pinkerton and deny Howard and Forland's request for attorney fees on appeal.

No. 56797-1-II

FACTS

Howard and Forland own a property containing a single-family home and an outbuilding that can be described as a workshop or shed. In 2017, Howard and Forland leased the shed to Pinkerton for his residential use. Pinkerton paid rent in exchange for his exclusive use of the shed. The shed does not have running water or bathroom facilities.

In 2021, Howard and Forland demolished the single-family home on the property and started constructing a new single-family home in its place.

On November 15, 2021, Howard and Forland served a 90-day notice to terminate tenancy on Pinkerton. The notice stated that Howard and Forland sought "possession of the portion of the premises [Pinkerton] occup[ied] so that they may occupy the unit as part of their principal residence." Clerk's Papers (CP) at 26.

On November 24, the City of Centralia sent Howard and Forland a letter stating that it had come to the City's attention that the shed "has been converted from a storage structure to an illegal, non-conforming habitable space, without permits, and is occupied." CP at 30. The letter gave Howard and Forland two weeks to respond, or the City would issue a notice of violation and initiate legal proceedings.

On December 4, Howard and Forland sent a written response to the City stating that they intended "to convert the accessory structure . . . back to storage use." CP at 32. The written response also told the City that they had hired an attorney to pursue eviction of an individual who was refusing to vacate the property.

On February 18, 2022, Howard and Forland served a 30-day notice to terminate tenancy on Pinkerton, who still had not vacated the shed. This notice stated that it was being issued

2

No. 56797-1-II

pursuant to RCW 59.18.650(2)(h).[1] The notice stated that Howard and Forland sought to terminate Pinkerton's tenancy "because the premises has been certified or condemned as uninhabitable by a local agency, and/or continued habitation of the premises would subject the landlord to civil or criminal penalties." CP at 28.

On February 22, Howard and Forland filed an unlawful detainer action in superior court. The complaint sought a writ of restitution and any other relief the court found just and appropriate. Although the complaint mentioned the 30-day notice, the complaint was based solely on the 90-day notice. Specifically, the complaint alleged that the 90-day notice was issued pursuant to RCW 59.18.650(2)(d).[2] Further, the complaint alleged that Howard and Forland "intend[ed] to utilize this outbuilding as part of their principal residence." CP at 4.

---

[1] RCW 59.18.650(2)(h) provides that a landlord may evict a tenant, refuse to continue a tenancy, or end a periodic tenancy if

> [t]he tenant continues in possession, after the landlord has provided at least 30 days' advance written notice to vacate that: (i) The premises has been certified or condemned as uninhabitable by a local agency charged with the authority to issue such an order; and (ii) continued habitation of the premises would subject the landlord to civil or criminal penalties. However, if the terms of the local agency's order do not allow the landlord to provide at least 30 days' advance written notice, the landlord must provide as much advance written notice as is possible and still comply with the order.

[2] RCW 59.18.650(2)(d) provides that a landlord may evict a tenant, refuse to continue a tenancy, or end a periodic tenancy if

> [t]he tenant continues in possession after the landlord of a dwelling unit in good faith seeks possession so that the owner or his or her immediate family may occupy the unit as that person's principal residence and no substantially equivalent unit is vacant and available to house the owner or his or her immediate family in the same building, and the owner has provided at least 90 days' advance written notice of the date the tenant's possession is to end. There is a rebuttable presumption that the owner did not act in good faith if the owner or immediate family fails to occupy the

3

No. 56797-1-II

Pinkerton filed an answer, affirmative defenses, motion to dismiss, and objection to the issuance of a writ of restitution. Pinkerton admitted most of the relevant factual allegations. However, Pinkerton argued that Howard and Forland had not properly terminated his tenancy, and he was not guilty of unlawful detainer. Specifically, Pinkerton argued that Howard and Forland had not established cause to terminate the tenancy because Howard and Forland did not intend to occupy the shed as their primary residence. Further, Pinkerton argued that Howard and Forland were not acting in good faith because their stated intent to occupy the shed was disingenuous.

Howard then filed a declaration stating that Pinkerton's residence in the shed was depriving Howard of his use of the newly constructed single-family home. Specifically, Howard stated that the City would not issue an occupancy permit for the new home unless Pinkerton stopped using the shed as a bedroom.

The superior court held a hearing on the motion for a writ of restitution. At the hearing, Pinkerton asked the superior court to dismiss the case, deny the writ of restitution, or set the matter over for trial.

The superior court found that Howard and Forland did not want to live in the shed. However, the superior court granted the writ of restitution. The superior court stated that denying the writ of restitution would be an absurd result because Pinkerton could "basically, hold up [Howard and Forland] from using their new home" and Howard and Forland "can't get into their residence either because of this." Verbatim Rep. of Proc. at 12.

---

unit as a principal residence for at least 60 consecutive days during the 90 days immediately after the tenant vacated the unit pursuant to a notice to vacate using this subsection (2)(d) as the cause for the lease ending.

4

No. 56797-1-II

The superior court ordered issuance of the writ of restitution.[3]  By ordering the writ of restitution, the superior court, in effect, denied Pinkerton's motion to dismiss.  Local law enforcement served the writ of restitution on Pinkerton, and Pinkerton left the shed.

Pinkerton appeals.

## ANALYSIS

A.    MOTION TO DISMISS AND WRIT OF RESTITUTION

Pinkerton argues that the superior court erred by denying his motion to dismiss and instead granting a writ of restitution.  We agree.

1.      Legal Principles

This issue requires statutory interpretation, which we review de novo.  *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014).  The primary goal of statutory interpretation is to determine and give effect to the legislature's intent.  *Id.* at 762.  To determine legislative intent, we first look to the statute's plain language.  *Id.*

If the statute's plain language is unambiguous, we use the words' common and ordinary meanings.  *Tesoro Refining & Mktg. Co. v. Dep't of Revenue*, 173 Wn.2d 551, 556, 269 P.3d 1013 (2012).  "If the statute's meaning is plain on its face, we give effect to that plain meaning as the expression of what was intended."  *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).

---

[3]  The record on appeal does not show that the superior court entered judgment for either party or ordered the case to proceed to trial.  The record also does not show the receipt of any bond from Howard or Forland as required by RCW 59.18.380.

No. 56797-1-II

When engaging in a plain language analysis, we do not read statutory provisions in isolation. *Citizens All. for Prop. Rts. Legal Fund v. San Juan County*, 184 Wn.2d 428, 437, 359 P.3d 753 (2015). Rather, the plain meaning of a statutory provision is derived from the context of the statute in which it appears, the entire act, and any related statutes that disclose legislative intent about the provision in question. *Id.*; *Jametsky*, 179 Wn.2d at 762. We give effect to all the language in a statute and do not render any portion meaningless or superfluous. *Spokane County v. Dep't of Fish & Wildlife*, 192 Wn.2d 453, 458, 430 P.3d 655 (2018).

To determine the meaning of undefined words in a statute, we use the dictionary to discern the words' plain meaning. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). We avoid interpreting statutes in ways that result in unlikely, absurd, or strained results. *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). However, the absurd results canon "must be applied sparingly." *Id*.

Only when a statute is ambiguous do we turn to statutory construction, legislative history and relevant case law to determine legislative intent. *Jametsky*, 179 Wn.2d at 762. A statute is ambiguous only if "'it is subject to more than one reasonable interpretation.'" *Id.* (quoting *City of Seattle v. Winebrenner*, 167 Wn.2d 451, 456, 219 P.3d 686 (2009)).

2.      Statutory Interpretation of RCW 59.18.650(2)(d)

Generally, a landlord may not evict a tenant, refuse to continue a tenancy, or end a periodic tenancy unless one of the causes in RCW 59.18.650(2) applies. RCW 59.18.650(1)(a). RCW 59.18.650(2)(d) provides in relevant part that a landlord may evict a tenant, refuse to continue a tenancy, or end a periodic tenancy if

6

No. 56797-1-II

> [t]he tenant continues in possession after the landlord of a dwelling unit in good faith seeks possession so that the owner or his or her immediate family may occupy the unit as that person's principal residence and no substantially equivalent unit is vacant and available to house the owner or his or her immediate family in the same building, and the owner has provided at least 90 days' advance written notice of the date the tenant's possession is to end.

The parties advance differing interpretations of RCW 59.18.650(2)(d). Pinkerton argues that RCW 59.18.650(2)(d) requires the landlord to intend to live within the dwelling unit that the tenant occupies. Howard and Forland argue that RCW 59.18.650(2)(d) only requires the landlord to intend to live on the property where the dwelling unit is located and use the dwelling unit for any purpose, including storage. We agree with Pinkerton.

The following words and terms from RCW 59.18.650(2)(d) are relevant to the statutory interpretation in this case: "dwelling unit," "occupy," "principal residence," and "house." "Dwelling unit" is the only term from this list that is statutorily defined within the Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW. A "dwelling unit" is "a structure or that part of a structure which is used as a home, residence, or sleeping place by one person or by two or more persons maintaining a common household, including but not limited to single-family residences and units of multiplexes, apartment buildings, and mobile homes." RCW 59.18.030(10). It is undisputed that Pinkerton used the shed as his home, residence, or sleeping place. Therefore, the shed constitutes a dwelling unit.

"Occupy" is not statutorily defined, but the dictionary provides two potentially relevant definitions: "to hold possession of" and "to reside in as an owner or tenant." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1561 (2002). The remainder of the statute, discussed below, makes clear that "to reside in as an owner or tenant" is the definition that applies.

7

No. 56797-1-II

"Principal residence" is also not defined within the Residential Landlord-Tenant Act.[4] However, the dictionary provides that a "residence" is "the place where one actually lives or has his home as distinguished from his technical domicile," "a domiciliary place of abode," or "a building used as a home." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1931. "Principal" means "most important, consequential, or influential" or "MAIN." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1802. Each of these definitions supports a reading of the statute that requires landlords to intend to live in the dwelling unit and use the dwelling unit as their main home.

Importantly, RCW 59.18.650(2)(d) requires that a unit substantially equivalent to the unit in question must not be available to "house the owner or his or her immediate family in the same building." To "house" means "to provide with a permanent dwelling place or living quarters." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1096. This definition shows that the landlords must intend to use the specific unit that the tenant occupies as their permanent dwelling place or living quarters.

---

[4] Howard and Forland argue that references to "residence" or "principal residence" in the Manufactured/Mobile Home Landlord-Tenant Act (chapter 59.20 RCW), homestead exemption statutes for enforcement of judgments, and property tax exemption statutes should guide our interpretation of RCW 59.18.650(2)(d). However, as discussed in this opinion, the plain language of RCW 59.18.650(2)(d) makes clear that "principal residence" refers to a unit being used as a dwelling place or living quarters. Further, none of the statutes cited by Howard and Forland refer to the Residential Landlord-Tenant Act or indicate in any way that their use of "residence" or "principal residence" should guide the interpretation of RCW 59.18.650(2)(d). *See* RCW 59.20.030(11); RCW 6.13.010, .050; RCW 84.36.383(12). Because RCW 59.18.650(2)(d) is unambiguous, the language in the statute controls, and we need not rely on other references in unrelated statutory provisions. *See Jones v. Dep't of Lab. & Indus.*, 17 Wn. App. 2d 437, 445, 486 P.3d 949 (2021) (use of terms in statutes that are unrelated and address different subjects are not helpful for discerning plain meaning).

8

No. 56797-1-II

Here, Howard and Forland did not intend to use the shed as their permanent dwelling place or living quarters, and instead intended to use the shed as storage. Thus, Howard and Forland could not rely on RCW 59.18.650(2)(d) to evict Pinkerton, refuse to continue Pinkerton's tenancy, or end Pinkerton's periodic tenancy.

Howard and Forland's unlawful detainer action was based solely on RCW 59.18.650(2)(d).[5] Therefore, the superior court erred by granting the writ of restitution, which in effect denied Pinkerton's motion to dismiss. Accordingly, we reverse the superior court's order granting the writ of restitution and remand for the superior court to grant Pinkerton's motion to dismiss.[6]

B.    ATTORNEY FEES AND COSTS ON APPEAL

Pinkerton, as well as Howard and Forland, request an award of attorney fees on appeal. RAP 18.1(a) provides, "If applicable law grants to a party the right to recover reasonable attorney

---

[5] Pinkerton also argues that the superior court erred by reasoning that denying the writ of restitution would be an absurd result. Specifically, Pinkerton contends that, because other methods for evicting Pinkerton or terminating Pinkerton's tenancy might have been available to Howard and Forland, the superior court erred by finding that Pinkerton could hold up Howard and Forland from using their new home. To advance his argument, Pinkerton argues that Howard and Forland could have ended the tenancy had they issued notices under other specific subsections of RCW 59.18.650(2). However, this case only concerns the notice that Howard and Forland issued under RCW 59.18.650(2)(d). We do not issue advisory opinions. *Lewis County v. State*, 178 Wn. App. 431, 437, 315 P.3d 550 (2013), *review denied*, 180 Wn.2d 1010 (2014). Additionally, we review issues of statutory interpretation de novo. *Jametsky*, 179 Wn.2d at 761. Therefore, we do not address Pinkerton's arguments regarding other statutory causes for eviction or termination of tenancy that Howard and Forland hypothetically could have pursued.

[6] Pinkerton also argues that the superior court erred by granting the writ of restitution without either (1) entering judgment for either party or (2) ordering Howard and Forland to post bond and setting the case for trial. Because we reverse the superior court's order granting the writ of restitution and remand for dismissal based on the superior court's incorrect interpretation of RCW 59.18.650(2)(d), we do not address Pinkerton's other argument for reversal and dismissal.

9

No. 56797-1-II

fees or expenses . . . the party must request the fees or expenses as provided in this rule." RAP 18.1(b) states that a party must devote a section of their opening brief to argument supporting the request for attorney fees.

1.      Pinkerton's Request for Attorney Fees And Costs

Pinkerton requests attorney fees and costs on appeal as a prevailing party under RAP 18.1, and cites RCW 59.18.290 and RCW 59.18.650(4) as the basis for awarding fees.

RCW 59.18.650(4) provides that

> [a] landlord who removes a tenant or causes a tenant to be removed from a dwelling in any way in violation of this section is liable to the tenant for wrongful eviction, and the tenant prevailing in such an action is entitled to the greater of their economic and noneconomic damages or three times the monthly rent of the dwelling at issue, and reasonable attorneys' fees and court costs.

Here, because we hold that Howard and Forland wrongly removed Pinkerton from his dwelling, Pinkerton is the prevailing tenant in this appeal.  Therefore, Pinkerton is entitled to attorney fees and costs on appeal under RCW 59.18.650(4).[7]

2.      Howard and Forland's Request for Attorney Fees

Howard and Forland do not devote a section of their opening brief to argument supporting their request for attorney fees and only request attorney fees in their one-sentence conclusion.  For this reason alone, Howard and Forland's request must fail.  *See* RAP 18.1(b).

---

[7] Because we hold that Pinkerton is entitled to attorney fees and costs on appeal under RCW 59.18.650(4), we do not address Pinkerton's request for attorney fees and costs on appeal under RCW 59.18.290.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 56797-1-II

CONCLUSION

We reverse the superior court's order granting the writ of restitution and remand for the superior court to dismiss the case. We also award attorney fees and costs on appeal to Pinkerton and deny Howard and Forland's request for attorney fees on appeal.

_____, J.
Lee, J.

We concur:

_____, C.J.
Glasgow, C.J.

_____, J.
Cruser, J.

11